STATE OF MISSOURI at the relation of PAUL W. PREISLER, Relator, v. W. H. WOODWARD, CLAXTON E. ALLEN, HENRY S. CAULFIELD and ADOLPH C. WIGET as Members of the Board of Election Commissioners of the City of St. Louis.—105 S. W. (2d) 912.

Court en Banc, April 9, 1937.

*George E. Duemler* and *Victor B. Harris* for petitioner.

*E. H. Wayman, Louis A. McKeown* and *Oliver Senti* for respondents.

LEEDY, J.—Mandamus to compel respondents, the Board of Election Commissioners of the City of St. Louis, to print the name of relator on the official ballot as a nonpartisan candidate for election as a member of the board of education at the election to be held Tuesday, April 6, 1937. Respondents, entering their appearances, waived the issuance and service of the alternative writ, and made return. The case thus made was submitted on briefs on March 26. ■ Being of the opinion that relator was entitled to a place on the official ballot, and the time being too short to permit of the promulgation of an opinion contemporaneously with the entry of judgment awarding a peremptory writ, the court on March 31 delivered a *per curiam* ordering the alternative writ be made peremptory, and that an opinion follow. Such practice has the sanction of numerous cases, among which is State ex rel. v. Seibel, 262 Mo. 220, 171 S. W. 69, where, in a similar situation, Judge LAMM observed: "If fresh justice is the sweetest as Lord Bacon says it is, that *per curiam* filled the bill. . . . The opinion so ordered to follow, follows, thus:" And so it is in the case at bar. Before the adoption of this opinion, the immediate object of relator's petition will have been served, and his candidacy submitted to and passed upon by the electorate, and it remains for us only to state the reasoning by which the conclusion heretofore announced was reached.

■ The Fifty-Seventh General Assembly (Law 1933, pp. 390-392) passed an act relating to "the election, qualifications, oath, compensation and *politics* of members of the Board of Education" in school districts in cities of 500,000 inhabitants or over, repealing Section 9572 and Section 9574, Article 17, Chapter 57, Revised Statutes 1929, and enacting new sections in lieu thereof to be known as Sections 9572, 9572-A, and 9574. The sole issue made by the pleadings is one of law, and presents the question of the constitutional validity of so much of Section 9574 as requires six of the twelve members of the board of education to "belong to the political party who shall have cast the highest number of votes for their candidate for Governor at the last general election, and six of whom shall belong to the political party who shall have cast the second highest number of votes for their candidate for Governor at the last general election." These provisions are challenged as impinging upon the constitutional guaranty "That all elections shall be free and open." [Art. II, Sec. 9, Const. of Mo.]

Section 9572, as amended, reads as follows: "The members of such board of education shall be elected from such city at large on general ticket, such members shall be at least thirty years of age, citizens and residents of the city, and shall have been residents and citizens for at least three years immediately preceding their elec-

tion. Not more than six members of such board shall belong to the same political party. When a vacancy is filled either by appointment or election, the member or members so appointed or elected shall be of such political party that not more than six of said board shall belong to the same political party at any one time."

The provisions of Section 9574, as amended, insofar as pertinent to this inquiry, read as follows: "The board of education shall be composed of twelve members, six of whom shall belong to the political party who shall have cast the highest number of votes for their candidate for Governor at the last general election and six of whom shall belong to the political party who shall have cast the second highest number of votes for their candidate for Governor at the last general election. . . . In the election of 1933 and every two years thereafter, four members of such board shall be elected at the regular municipal election, two from the political party who shall have cast the highest number of votes for their candidate for Governor at the last general election and two from the political party which shall have cast the second highest number of votes for their candidate for Governor at the last general election. . . ."

It will be observed that Section 9572, after prescribing certain qualifications as to age, citizenship and length of residence, provides "not more than six members of such board shall belong to the same political party. When a vacancy is filled either by appointment or election, the member or members so appointed or elected shall be of such political party that not more than six of said board shall belong to the same political party at any one time." The purpose of such provisions is plain. They seek to obtain membership of persons who are not all of the same political views, and thus to provide for representation in the body so elected of different and conflicting interests. The statute does not compel the election of members of any particular party, nor does it disqualify any citizen from holding such an office on account of his political beliefs, and is, therefore, unobjectionable. [19 R. C. L. 61, p. 756.] In State ex rel. v. Wright, 251 Mo. 325, 158 S. W. 823, Ann. Cas. 1915A, it was pointed out, "Such conditions as to differing political faith as a requisite qualification for a membership on one of our many boards is almost the statutory rule rather than the exception. For example, this qualification inheres in the board of curators of the State University; . . . to the regents of our several normal schools; . . . as we have seen to the Supreme Court Commissioners, and to others too numerous to mention here. The reason for these several requisites of different party affiliation is the same as that under discussion here, viz., to procure nonpartisan boards in each case."

Respondents lean heavily upon the authority of State ex rel. v. Wright, supra, decided by this court in 1913. It upheld a statute making it a condition of eligibility in an *appointee* that he shall

"be a member of the leading party politically opposed to that to which the Governor belongs." It was stated in the opinion that respondents' contentions (raising constitutional objections) "are not vehement or insistent, or indeed, very urgent." The case is not authority on the question presented by this record for the reason, first, "there is, of course, no analogy between the cases of elective offices and those where the office is to be filled by appointment" (Rogers v. City of Buffalo, 25 N. E. 274), and, second, the provision of the Constitution here invoked was not raised or considered therein. There the Legislature had conferred the power of appointment on the Governor. Applying the doctrine that the Constitution "may be said to be a limitation upon the powers of the legislative branch, but a grant of powers to the executive branch," and because the power to appoint did not accrue to the Governor directly by the Constitution, but came to him indirectly by delegation from the Legislature, to whom it was directly conferred by the Constitution, it was held that in conferring the power of appointment on the Governor, the Legislature had a right to attach such conditions, and to require such qualifications in those appointed by the Governor as it saw fit (within certain limitations).

Respondents invoke the same principle in the case at bar, basing their contention upon the following constitutional provisions: ". . . the General Assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years." [Art. XI, Sec. I, Const. of Mo.] "The appointment of all officers not otherwise directed by this Constitution shall be made in such manner as may be prescribed by law." [Art. XIV, Sec. 9, Const. of Mo.] It is true, the legislative power, generally speaking, is unlimited, save as the Constitution has set bounds to it. But what is the correct construction to be given the constitutional provision invoked by relator ("that all elections shall be free and open"); and does it extend to, and limit the power of the Legislature in regard to legislation such as here under review?

In State ex rel. v. Arnold, 277 Mo. 474, 210 S. W. 374, the question was whether it was an absolute requirement of a statute "as a condition precedent to the placing by the board of election commissioners of the name of a proposed nonpartisan candidate on the official ballot, that the receipt of the city treasurer . . . shall be filed along with and contemporaneously with the certificate of nomination of such proposed candidate." In resolving that question in the negative, this court in an opinion by FARIS, J., took occasion to say: "The affirmative of the question stated and presented by the facts here at issue would, in our opinion and in the light of the language of the above section, be too narrow a view to take of the meaning of that section. Such a view would inevitably restrict

and circumscribe the right of a citizen to be a candidate for office within such limits and hedge the privilege about with such conditions as materially to impinge upon the guaranty of the Constitution that 'all elections shall be free and open.' " To the same effect is State ex rel. v. Waechter et al., 332 Mo. 574, 58 S. W. (2d) 971.

If the Legislature has the power to attach as a condition of eligibility that members of an elective body, such as the board of education, shall be selected from the two major political parties, then it necessarily follows that it would have the power to prescribe that all the members shall be of one political party, or that its membership be made up of individuals belonging to the political parties casting, respectively, the highest and *third* highest votes at the last preceding general election, thus, in both instances, making ineligible members of the numerically strongest minority party. To so restrict elibibility would, we think, constitute a violation of the constitutional guaranty mentioned.

We find no support for respondents' position in the line of cases cited by them upholding statutes providing, as a condition precedent to a political party participating in a *primary* election, that it shall have polled a certain percentage of the total vote at the next preceding election.

The purpose to be attained by the statute, as amended, was to make the administration of the affairs of the school district nonpartisan. This end will have been accomplished even though the invalid provisions respecting affiliation with an indefinitely described political party fall, as unconstitutional.

It was upon a consideration of the foregoing matters that the peremptory writ was ordered. We thought then, as now, that it was providently issued.

All concur, except *Douglas, J.,* not voting because not a member of the court when cause was submitted.