STATE OF MISSOURI on information of ROY McKITTRICK, Attorney General, Relator, v. SOLON CAMERON.—117 S. W. (2d) 1078.

Court en Banc, June 17, 1938.

*Roy McKittrick*, Attorney General, and *J. E. Taylor*, Assistant Attorney General, for relator; *Boyle & Priest* and *Thomas Bond* of counsel.

832

*Alroy S. Phillips* for respondent.

TIPTON, J.—This is an original proceeding in *quo warranto*, the object of which is to oust respondent from office as a member of the Board of Education of St. Louis, Missouri.

At the municipal election held on April 6, 1937, there were to be four members elected to the Board of Education for the full term of six years and one member to be elected for an unexpired term of four years. A special ballot was prepared by the election board and the voters were instructed to vote accordingly. There were seven holdover members, three Democrats and four Republicans, with terms expiring in 1939 and 1941. All of the candidates for the unexpired term were Democrats and Rudolph Hofmeister was declared elected. Of the five candidates receiving the highest vote at this election for the full terms, Mrs. Haymer Lowenhaupt, a Democrat, received 139,213 votes; Thomas F. Quinn, a Democrat, received 139,129 votes; Richard Murphy, a Democrat, received 108,447 votes; Mark D. Eagleton, a Republican, received 105,283 votes; and respondent Solon Cameron, a Republican, received 95,933 votes.

In its official canvass the Board of Election Commissioners of that city found the vote for the respective candidates to be as above stated and issued certificates of election to Mrs. Lowenhaupt, Quinn, Eagleton, and respondent Cameron. Other pertinent facts will be stated in the course of this opinion.

The ultimate question for us to determine is whether respondent was duly elected as a member of the Board of Education, and is thereby entitled to retain his membership on this board by virtue of the certificate of election issued to him.

The case of State ex rel. Preisler v. Woodward et al., 340 Mo. 906, 105 S. W. (2d) 912, was a mandamus proceeding to compel the election board of the city of St. Louis to permit relator's name in that case to be placed on the special ballot for the election of the school board of that city to be held April 6, 1937, as a nonpartisan, and we held in favor of relator. In ruling that case we held that part of Section 9574 as amended by the act of April 22, 1933, Laws of Missouri, 1933, requiring that six of the twelve members of the Board of Education "belong to the political party who shall have cast the highest number of votes for their candidate for Governor at the last general election and six of whom shall belong to the political party who shall have cast the second highest number of votes for their candidate for Governor at the last general election" as impinging on the constitutional guaranty "that all elections shall be free and open." [Art. IX, Sec. 2 of the Constitution of Missouri.]

The pertinent parts of the Act of 1933, supra, are as follows:

"The members of such board of education shall be elected from such city at large on general ticket, such members shall be at least thirty years of age, citizens and residents of the city, and shall have been residents and citizens for at least three years immediately preceding their election. Not more than six members of such board shall belong to the same political party. When a vacancy is filled either by appointment or election, the member or members so appointed or elected shall be of such political party that not more than six of said board shall belong to the same political party at any one time."

Section 9572-A deals with the oath, compensation and exemption from jury service, and is not involved in the issue of this case.

After cutting out and throwing away the bad parts of Section 9574, as ruled in the Preisler case, that section would read as follows: (Leaders denote deleted portions.)

"The Board of Education shall be composed of twelve members . . . Said members shall be elected by general ticket by the qualified voters of such city and shall hold office for a term of six years or until their successor shall have been elected and qualified. Said members shall assume the duties of their office at the first regular meeting of the Board of Education after their election. In the election of 1933 and every two years thereafter, four members of such Board shall be elected at the regular municipal election . . . All members shall be subject to and governed by the same rules, laws and regulations which govern elections in such city for municipal officers, or for members of the board of aldermen including the registration of voters. There shall be a special ballot used for election of the members of the Board of Education and the candidates . . . shall be listed under their party label . . . The candidates . . . receiving the highest number of votes shall be declared elected and given a certificate of election by the Board of Election Commissioners of such city. This law shall in no way effect (affect) the present members of the Board, who shall serve out their terms to which they were originally elected."

Relator contends that the Act of April 22, 1933, was all one scheme to create a bipartisan (two-party) Board of Education: that the parts of the act held in the Preisler case to be unconstitutional are essential to effectuate that intent, and that without them the act is unworkable and unenforceable; therefore, the whole act fails.

"The general rule is that the unconstitutionality of a part of a statute does not render the remainder of the statute invalid where enough remains, after discarding the invalid part, to show the legislative intent and to furnish sufficient means to effectuate that intent. In State ex inf. v. Duncan, 265 Mo. 26, 45, 175 S. W. 940, 945, Ann. Cas. 1916D, 1, this court said: 'if after cutting out and

throwing away the bad parts of a statute, enough remains which is good to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not, as a matter of law, to declare the whole statute bad. [Cooley on Con. Lim. (7 Ed.) 247; State ex rel. v. Gordon, 236 Mo. 1. c. 171, 139 S. W. 403; State ex rel. v. Taylor, 224 Mo. 1. c. 474, 123 S. W. 892; State v. Bockstruck, 136 Mo. 335, 38 S. W. 317.]'

''In Cooley's Constitutional Limitations (7 Ed.), page 247, the rule is stated thus: 'If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus made dependent, conditional or connected must fall with them.' '' [State ex rel. McDonald v. Lollis, 326 Mo. 644, 1. c. 651, 33 S. W. (2d) 98, 1. c. 100.]

Assuming that the clause, ''not more than six members of such board shall belong to the same political party,'' in new Section 9572, is valid, the question arises as to how it can be worked so that four members can be elected every two years without applying the invalid provision of Section 9574 when, as we have just seen, the invalid provision must be entirely rejected.

Respondent contends that by eliminating the portion invalidated by the Preisler case and reading together new Sections 9572 and 9574, as we should do to get the true legislative intent, Section 9574 would read as follows:

''The Board of Education shall be composed of twelve members (NOT MORE THAN SIX OF WHOM SHALL BELONG TO THE SAME POLITICAL PARTY). Said members shall be elected by general ticket by the qualified voters of such city and shall hold office for a term of six years or until their successor shall have been elected and qualified. . . . In the election of 1933 and every

two years thereafter, four members of such Board shall be elected at the regular municipal election (AND THE MEMBER OR MEMBERS SO ELECTED SHALL BE OF SUCH POLITICAL PARTY THAT NOT MORE THAN SIX OF SAID BOARD SHALL BELONG TO THE SAME POLITICAL PARTY AT ANY ONE TIME). All members shall be subject to and governed by the same rules, laws and regulations which govern elections in such city for municipal officers, or for members of the board of aldermen including the registration of voters. There shall be a special ballot used for election of the members of the Board of Education and the candidates shall be listed under their party label and each voter shall vote for members of each party to the Board of Education (IN SUCH MANNER THAT NOT MORE THAN SIX OF SUCH BOARD SHALL BELONG TO THE SAME POLITICAL PARTY AT ANY ONE TIME). The candidates of each party receiving the highest number of votes shall be declared elected and given a certificate of election by the Board of Election Commissioners of such city.''

We have no serious disagreement with respondent until we reach the clause, ''and each voter shall vote for members of each party to the Board of Education (IN SUCH MANNER THAT NOT MORE THAN SIX OF SUCH BOARD SHALL BELONG TO THE SAME POLITICAL PARTY AT ANY ONE TIME). The candidates of each party receiving the highest number of votes shall be declared elected and given a certificate of election by the Board of Election Commissioners of such city.'' We do not believe the construction put upon this section by respondent is workable. For instance, presume there were four Democratic candidates, four Republican candidates, four Socialist candidates, and four nonpartisan candidates on an election ballot. Then, under respondent's theory, the certificate of election would be given to the highest Democrat, the highest Republican, the highest Socialist, and the highest nonpartisan, because, as respondent construes the act, the ''candidates of each party receiving the highest number of votes'' should be declared elected.

Again, take the election in question: under his own construction respondent would not have been entitled to a certificate of election because he did not receive the highest number of votes on the Republican ticket. Instead, Preisler, having received the highest number of votes on the nonpartisan ticket, would have been elected. Under respondent's reasoning it would be possible for a candidate of a party receiving a very small percentage of the votes cast to be elected.

Nor do we think the phrase, ''in such a manner that not more than six of such board shall belong to the same political party at any one time,'' adds anything to the statute. Of course, every

838

voter is presumed to know the law, but he is not presumed to know a candidate's qualifications for office, such as age, residence, want of naturalization, political or religious beliefs. [State ex rel. Atty. Gen. v. Vail, 53 Mo. 97; Sheridan v. St. Louis, 183 Mo. 25, 81 S. W. 1082, and cases cited therein.] These cases further hold that if the candidate receiving the highest number of votes is not eligible to hold the office, the next high candidate is not, by virtue of this disqualification, entitled to the certificate of election. Therefore, if Murphy were ineligible the certificate of election could not be given to respondent.

■ Nor could the act be construed to mean that the two candidates of each party receiving the highest number of votes and the two candidates receiving the next high number of votes should be declared elected. To do so would be to include the parts of the act carved out as unconstitutional in the Preisler case which, as we have already seen, cannot be done. Further, it is not our duty or right to write a statute; that function belongs solely to the Legislature. Therefore, it cannot be said that the act should be construed to mean that Democrats are to run against Democrats, Republicans against Republicans, Socialists against Socialists, and nonpartisans against nonpartisans. We are unable to construe the act as a whole and make it workable so that "not more than six members of such board shall belong to the same political party."

■ Even if we were mistaken in holding the act unworkable, it would still be invalid because the remaining portions would not show the true legislative intent. "The fact that the text or body of the act remaining, after a part has been declared invalid, may be complete in itself, is not alone sufficient to sustain it. For if the part held invalid is so connected with the residue of the act as to furnish the inducement or compensation or consideration for the enactment of the residue and as to warrant the belief that the Legislature intended them as a whole and would not have passed the part remaining had it known the other part would be held invalid, then the entire act must fall." [State ex rel. Tolerton v. Gordon, 236 Mo. 142, l. c. 172, 139 S. W. 403.]

The clear intent of the Legislature, as gathered from the terms of the act, was to establish, not a nonpartisan, but, rather, a bipartisan school board. The act as passed required that six members of the board "belong to the political party who shall have cast the highest number of votes for their candidate for Governor at the last general election and six of whom shall belong to the political party who shall have cast the second highest number of votes for their candidate for Governor at the last general election." Also, the emergency clause states that a "bipartisan board of education being immediately necessary . . . an emergency exists."

In the Preisler case, supra, we said, "The purpose to be attained by the statute, as amended, was to make the administration of the affairs of the school district nonpartisan. This end will have been accomplished even though the invalid provisions respecting affiliation with an indefinitely described political party fall, as unconstitutional." In other words, a bipartisan board gives a nonpartisan administration because no party has a majority on the board. However, a nonpartisan board does not necessarily give a nonpartisan administration. We are all familiar with city councils in this State which are elected as nonpartisan, yet give a very partisan administration of the affairs of the city. In those instances, the board or a majority of the board belong to one political party. The old law provided for a nonpartisan school board in the city of St. Louis, and we must assume that the Legislature passed the Act of 1933 to obviate the evils of a nonpartisan board's giving a partisan administration. The only material difference between the old law and the new act was to change the board from nonpartisan to bipartisan. The question we had before us in the Preisler case was whether a person who did not belong to either the Democratic or Republican party could have his name on the special school ballot. From what we have said it follows that the entire Act of 1933 is unconstitutional.

The question now arises as to the validity of old Sections 9572 and 9574, both of which were repealed by a repealing clause. The rule is that where the repealing clause is incidental to the rest of the act and the act is unconstitutional, the repealing clause is likewise invalid and the prior general law is left unrepealed. "In other words, when, as here, the evident purpose of the repeal is to displace the old law and substitute the new in its stead, the repealing section or clause, being dependent on that purpose of substitution, necessarily falls when falls the main purpose of the act." [State v. Thomas, 138 Mo. 95, l. c. 100, 95 S. W. 481.] To the same effect are the following cases: State ex rel. Crouse v. Mills, 231 Mo. 493, 133 S. W. 22, and State ex inf. Attorney General v. Joyce, 307 Mo. 49, 269 S. W. 623. We hold that since the Act of 1933 is invalid, the old Sections 9572 and 9574 are in force and effect. Respondent contends that if the Act of 1933 is unconstitutional then the election of April, 1937, is void, and as he was a member of the school board prior to that election he cannot be ousted but is entitled to hold office until his successor is duly elected and qualified under Article XIV, Section 5, of our State Constitution.

Since the Act of 1933 is unconstitutional and is the same as if it had never been passed, thereby leaving old Sections 9572 and 9574 in effect, we must determine if the election for school directors, held on April 6, 1937, was a substantial compliance with the old law.

The pertinent parts of the old law (Sec. 9574, R. S. 1929) are as follows:

"Such special election and all the elections for members of such board of education shall be subject to and governed by the same laws, rules and regulations which govern elections in such city for municipal officers or members of the house of delegates, including the law pertaining to the registration of voters. After such special elections there shall be elected at each municipal election, whether for general municipal officers or for members of the house of delegates, four members of such board of education, who shall assume the duties of their office at the first regular meeting of such board of education after their election, and who shall hold office for six years, and until their successors shall have been elected and qualified."

On the ballots used in this election were printed the names of the candidates and directions to the voters, which were to the effect that they were to vote for four, and there is no contention that the names of the candidates were not legally entitled to be placed upon same. We do not think the fact that the party labels of the candidates appeared on the ballots prevented the election from being a substantial compliance with Section 9574, Revised Statutes 1929. In accordance with that section, the four candidates receiving the highest number of votes should have been given certificates of election.

From what we have said, it follows that the writ of ouster should issue. It is so ordered.

All concur, except *Frank, J.*, who dissents.