Paul W. PREISLER, Respondent,

v.

CITY OF ST. LOUIS, a Charter City and Municipal Corporation, John J. Dwyer, Treasurer of the City of St. Louis, Board of Election Commissioners of City of St. Louis, Michael L. Galli, Daniel J. Nack, Eugene C. Wienke, and G. Duncan Baumann, Appellants.

No. 47157.

Supreme Court of Missouri,

Division No. 1.

March 5, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied April 13, 1959.

Charles J. Dolan, Acting City Counselor, David S. Hemenway, Asst. City Counselor, for appellants.

Paul W. Preisler, St. Louis, respondent, pro se.

COIL, Commissioner.

Paul W. Preisler brought a declaratory judgment action against the City of St. Louis, its treasurer, and the members of the Board of Election Commissioners, seeking an adjudication that he has the right as a qualified citizen to become a candidate for a city office in the March 10, 1959 city primary election and at each primary election held thereafter on an independent or nonpartisan ticket and that he has the right as a voter to vote for candidates on independent and nonpartisan tickets in such city primaries.

The trial court awarded the relief sought and defendants below have appealed from the ensuing judgment. We shall hereinafter refer to the parties as they were designated in the trial court. All section references herein are to sections of RSMo 1949, V.A.M.S., unless otherwise indicated.

Sections 120.140–120.230 provide for the nomination of candidates for office by new political parties and by a required number of individual electors signing petitions. Sections 120.300–120.650 provide for the nomination of candidates by established political parties by the primary election method. Section 120.300 provides that the provisions of sections 120.300–120.650 are not applicable to, inter alia, "city officers not elected at a general state election * * *."

Sections 122.650–122.970 provide the manner in which all candidates for elective city offices in cities of more than 400,000 inhabitants who are *not* to be elected at a general state election are to

be nominated, viz., either by primary election or by certificates signed by a prescribed number of electors. Those sections, in so far as necessary to a decision of the present question, provide that the candidate of a political party, therein defined as an "organization which at the last preceding general state election before such primary polled as a party at least three per cent of the entire vote cast in such city for the office of governor elected at such preceding election," shall become a candidate upon the primary ballot by making a declaration of candidacy and paying a fee; that a "nonpartisan candidate," i. e., a candidate who is to be nominated by the certificate of electors, shall be nominated by a certificate signed by registered electors of the city in a number equal to two per cent of the entire vote cast for mayor at the last preceding election, and the persons so nominated shall be placed on an official ballot at the following election under the heading "nonpartisan candidates."

It is provided by sections 120.140–120.230, which by virtue of section 120.150 are applicable to the City of St. Louis, that independent candidates for city public office may be nominated by petitions signed by voters of a number equal to a certain percentage of those who voted at the next preceding general election in that city.

(We need not decide whether sections 120.140–120.230 repealed by implication sections 122.680, 122.930, 122.940, and 122.950, the four sections which relate specifically to "nonpartisan candidates." That is to say, we do not reach the question whether the legislature by providing the manner in which *independent* candidates might be nominated under section 120.180 intended to include *nonpartisan* candidates who theretofore, at least, could be nominated under sections 122.680 and 122.930 by certificates signed by electors, or whether it was intended to make provisions for the nomination of *independent* candidates in addition to the separate and existing provisions for the nomination of "nonpartisan candidates." See in that connection State ex rel. Preisler v. Toberman, 364 Mo. 904, 269 S.W.2d 753, which held that sections 120.140–120.230 repealed by implications sections 120.010–120.080 [subsequently expressly repealed, Laws 1957, p. 758] which had provided for the voter certificate method for nominating candidates.)

██ For present purposes, it is sufficient to know that under presently applicable law a candidate for a city office in St. Louis at a *general city election* which is not held at the time of a *general state election* can be nominated as such candidate in a primary election *only* if he is a member of a political party. Or, stated differently, a person who wishes to be a nonpartisan or an independent candidate in a general city election, which occurs at a time other than at the time of a general state election, may be nominated *only* by a petition or certificate signed by a prescribed number of voters, and such person may not be nominated in a primary. And, as we have noted above, the present law is such that if one wishes to be an independent or nonpartisan candidate for a city office at a general city election, which occurs at the same time as a general state election, he may be nominated *either* by winning on the nonpartisan or independent ticket in the primary or by a certificate or petition signed by the requisite number of voters.

Plaintiff contended below and contends here that the sections contained in the law specifically applicable to cities of over 400,000 inhabitants, viz., sections 122.650–122.970, are unconstitutional as violative of Sections 2 and 25 of Article I, Missouri Constitution of 1945, V.A.M.S., and of the 14th Amendment to the United States Constitution. Plaintiff's exact contentions may perhaps best be expressed by quoting these excerpts from his brief: "that in seeking to become a candidate for the regular term of the city office of President of the Board of Aldermen of the City of St. Louis, there must be available

to him, as a person who desires to file declaration papers and propose as a candidate on the nonpartisan or on the independent primary ticket, the same or equal procedure or opportunity to become a candidate for nomination in the primary election as is available to a person who prefers the primary ticket of a political party. This is relator's *personal constitutional right and opportunity* protected by Section 2 of Article I of the Constitution of Missouri of 1945. ' * * * that all persons are created equal and are entitled to equal rights and opportunity under the law * * *,' " and that plaintiff "is denied his right and opportunity to become a nonpartisan candidate by the same method as a party candidate" may become his party's candidate at the ensuing general city election. And plaintiff makes the further point that the constitutional provision, Section 25, Article I, providing that all elections shall be free and open, requires that he, as a voter as distinguished from a candidate, have a free choice to vote for any candidate who aspires to an office and that he as a voter is denied that choice unless he may vote for a nonpartisan or independent candidate at a primary election.

Defendants contend that the law specifically applicable to the City of St. Louis (§§ 122.650–122.970) is valid and that the difference in nominating procedures for political party candidates and that provided for nonpartisan or independent candidates is based upon a reasonable classification within the sole discretion of the legislature; that consequently the failure to provide like nominating procedures for political party candidates and independent candidates is not violative of the equal protection clauses of the Missouri and United States Constitutions and in no way prohibits or interferes with the right of a voter to freely exercise his voting franchise.

Plaintiff concedes, as defendants contend, that it was reasonable for the legislature to classify areas based on population and that, therefore, it was proper to make provisions respecting elections and the nomination of candidates applicable only to cities of over 400,000 inhabitants. The real dispute in the instant case is whether it was reasonable for the legislature to provide different nominating procedures for political party candidates and independent or nonpartisan candidates, i. e., whether a law violates any of plaintiff's constitutionally guaranteed rights by requiring that plaintiff in order to become a candidate for a city office on a nonpartisan or independent ticket must be nominated by a petition or certificate signed by a certain number of electors when at the same time that same law provides that to become the nominee of a political party one shall file his declaration, pay the required fee, and receive more votes than any other candidate on his party's ticket at a primary election.

We have the opinion that the fallacy of plaintiff's present position is the failure to recognize the nature and purpose of a primary election. While it may be that a primary election constitutes an integral part of the total electoral process and is thereby within a protection of pertinent constitutional provisions, it is clear that a primary election is simply one method used to select nominees who, in turn, are the candidates at an ensuing general election. A primary election is only a nominating device and it is not essential that all nominating devices provided in the same law must be identical in order to afford those affected equal rights under the law. On the contrary, the legislature reasonably may recognize that there are differences between organized political party candidates and nonpartisan or independent candidates sufficient to justify provisions for different nomination procedure. One essential difference that the legislature apparently recognized is that the candidate of a political party who receives the most votes on his party's ticket in the primary thereby demonstrates that he will command substantial voter support in the general city election, while one may be a candidate

at the primary on a nonpartisan or independent ticket and receive the most votes among those on that ticket and still not demonstrate thereby that he will enjoy any appreciable voter support in a general election. And that difference is because of the very nature and definition of a political party. But if everyone who wished to be a nonpartisan or independent candidate for a given office could simply, by filing his declaration, have his name placed on the general election ballot, it is apparent that the resulting ballot might well be and probably would be unduly long and confusing to voters. Consequently, the need to provide nominating devices or methods which limit the size and complexity of the ballot by making reasonably sure that the names thereon are of candidates who are not only genuine aspirants for the office but who also will command some degree of measurable voter support in a general election, is apparent.

One method or device to accomplish such is the primary which, if confined to established political parties, assures, as noted, that the winning primary candidate and thus the nominee of his party will command considerable voter support in the general election. It would seem likewise reasonable to require one who wishes to be an independent or nonpartisan candidate at a general election to also demonstrate some measurable voter support; and it seems that the instant requirement that such aspirant demonstrate that voter support by obtaining the nomination only if there is a petition or certificate in his behalf signed by not less than two per cent of the voters voting in a prescribed preceding election is a reasonable device by which to accomplish the noted objective.

The fact that a provision permitting persons wishing to become nonpartisan or independent candidates to be nominated by the primary method might, under some circumstances, also demonstrate voter support, or the fact in and of itself that the nominating methods for political party candidates are different than those for independent or nonpartisan candidates, does not mean either that the requirement for the petition or certificate nominating method is not reasonable one or that a legislature must prescribe the same nominating device for all who aspire to office. It is sufficient to satisfy the equal rights requirement that all persons in the same circumstances are treated alike, provided, of course, the circumstances, as here, constitute a reasonable basis for different treatment. It has been written that "a legislature has power to enact such regulations for independent * * * nominations * * * as may be reasonably calculated * * * to limit the size of the ballot by confining the printing to candidates who are genuine aspirants to office and enjoy an appreciable support." 18 Am.Jur. (Cum. Supp.), Elections, § 119.5, p. 32.

And there is another difference between political party candidates and nonpartisan or independent candidates which makes it reasonable for the legislature to have provided different nominating procedures. The primary for political party candidates is a nominating method whereby the respective party candidates chosen are thereby pledged to support the leadership and philosophy of the party whose nominees they are; a desirable result under our two-party system. No such consideration exists, however, in providing a nominating procedure for independent or nonpartisan candidates. They are not members of any party and need not be chosen in such manner as to reasonably assure that they subscribe to and support the philosophy of any political party.

We hold that the differences between political party candidates and nonpartisan or independent candidates, heretofore noted, constituted a sufficient basis for treating the two types of candidates differently in so far as concerned the procedures or devices for their nominations, so long as both methods were reasonable.

Plaintiff contends further, however, that the task of securing a nominating petition

or certificate signed by the requisite number of voters is so burdensome as compared with the task of becoming a candidate on the primary ticket of an established political party as to make the provision requiring nonpartisan and independent candidates to be nominated by petition or certificate an unreasonable one, i. e., says plaintiff, it so restricts one's constitutional right to become a candidate for office as to effectively deny or improperly impede the exercise of that right and thus violates the constitutional guaranty of the right to become a candidate for an office.

■ We agree that every eligible person has the right under the constitutional guaranty of free and open elections to become a candidate for office, Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62, 64; State ex rel. Haller v. Arnold, 277 Mo. 474, 210 S.W. 374, 376[3]; and that restricting that constitutional right in such a manner as to effectively deny or improperly impede it is a violation of the guaranty, State ex rel. Preisler v. Woodward, 340 Mo. 906, 105 S.W.2d 912, 914[4, 5]; State ex rel. Haller v. Arnold, supra, 210 S.W. 376[2].

Plaintiff, in argument, points to the many details involved in properly preparing nominating petitions or certificates and compares the enormity of that task with the comparative ease with which, and the simple process by which, one may seek nomination at a primary election, viz., by filing a simple form with a receipt for a filing fee. In our opinion, plaintiff has erroneously attempted to equate the task of becoming a candidate of a political party on its ballot in the *primary election* with the task of a nonpartisan or an independent becoming a candidate on the ballot at the ensuing *general city election*. The two are not properly comparable. On the contrary, the tasks which, if desired, should be equated are the task of becoming a nonpartisan or independent candidate in the *general city election* with the task of becoming a political party candidate in that same *general city election*. When so equated, it is clear that which of the tasks

or undertakings is more burdensome or more enormous depends entirely upon conditions and circumstances which may exist in an area at any given time. Certainly, however, we venture to say that usually it would be far more burdensome, in the sense of requiring more time and effort and money and in the sense of being more difficult of accomplishment, to become the nominee of a political party through a primary election than to become a nonpartisan or independent candidate at the general city election by procuring a petition or certificate signed by a number of voters equal to two per cent of the number who voted in a prior election.

Plaintiff contends further, however, that the certificate nominating method described in section 122.930 and the petition method described in section 120.180 were designed for and are intended for use by a group of persons who wish to nominate a candidate directly to a general election ballot on a nonpartisan or independent ticket, and that such methods were not intended for use by the individual who on his own initiative desires to become a nonpartisan or independent candidate. As we read the provisions of the sections mentioned, the initiative for one's nonpartisan or independent candidacy may originate as well with the candidate himself as from the enthusiasm of other voters. Certainly it is unsound to imply that because the statute sections in question do not say in so many words that an *individual or person* desiring to become a candidate may procure a petition or certificate but simply provide for nomination by certificates or petitions signed by a certain number of voters, means that such methods are not meant for use by or are not adequate for an individual who desires to be a candidate for an office.

■ We readily agree with plaintiff, that an anomalous situation exists in this; that, as heretofore noted, if the general city election at which one is to stand for election is at the time of a *general state election,* an individual who desires to be a

candidate on a nonpartisan or independent ticket may be nominated at a primary election and thus and thereby be a candidate at the ensuing general city election; while, if the election at which one desires to stand is at a time *other than at the time of a general state election,* the individual does not have the choice of entering the primary on a nonpartisan or independent ticket but must be nominated either by a certificate signed by so many voters (§ 122.680) or by a petition signed by a certain number of voters (§ 120.180). In fact, we frankly say that we do not appreciate the reason why it was desirable to so write the law as to make the distinction between which nominating device independent and nonpartisan candidates may use depend solely upon whether the general city election was or was not to be held at the same time as a general state election. But it is not our province to determine or even to speculate on the wisdom of the regulations which the legislature has seen fit to impose. The question for us is only whether the regulations which the legislature has imposed were and are reasonable ones. The "legislative power, generally speaking, is unlimited, save as the Constitution has set bounds to it." State ex rel. Preisler v. Woodward, supra, 105 S.W.2d 915. As we have said heretofore, it is clear to us that the two different devices provided for the nomination of political party candidates and of independent or nonpartisan candidates to the general city election constituted reasonable regulations which could be lawfully imposed within the discretion of the legislature.

In the view we have taken, it is unnecessary to discuss other matters briefed by the parties.

It follows that the provisions of the election law in question (applicable provisions contained in sections 122.650–122.970) as applied to plaintiff do not violate Sections 2 or 25 of Article I of the Missouri Constitution or the 14th Amendment to the United States Constitution. The judgment is therefore reversed and the case remanded with directions to enter judgment in accord with this opinion.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.