## Parrish's Petition.

*Election laws—Overseers of election—Appointment.*

The fourth section of the Act of January 30, 1874, P. L. 31, providing for the appointment of overseers of elections on the petition of five or more citizens of any election district, is mandatory in character, and is not repealed by the Act of June 10, 1893, P. L. 419.

The watchers provided for by the act of 1893, have different rights and duties than the overseers required to be appointed by the court under the act of 1874.

Argued Jan. 12, 1906. Appeal, No. 353, Jan. T., 1905, by Percival Parrish et al., from order of C. P. No. 1, Phila. Co.,

Sept. T., 1905, No. 4410, refusing to appoint overseers of elections In re Petition of Percival Parrish et al.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Petition for the appointment of overseers of election for the second division of the seventh ward of the city of Philadelphia.

The opinion of the Supreme Court states the case.

*Error assigned* was the order of the court refusing to appoint overseers.

*Thomas Raeburn White*, with him *R. Warren Barrett* and *Robert D. Jenks*, for appellants.—The Act of January 30, 1874, P. L. 31, makes it the duty of the court to appoint overseers upon petition of five qualified electors.

The Act of June 10, 1893, P. L. 419, providing for the appointment of watchers, does not repeal the Act of January 30, 1874, P. L. 31, providing for the appointment of overseers : Appointment of Overseers, 9 Pa. Dist. Rep. 629.

*Alex. Simpson, Jr.*, for appellee, cited : Shaeffer v. Jack, 14 S. & R. 426 ; Com. v. Summerville, 204 Pa. 300 ; Appointment of Overseers, 9 Pa. Dist. Rep. 629 ; Easton City Election Overseers, 12 Pa. Dist. Rep. 526.

OPINION BY MR. JUSTICE MESTREZAT, February 19, 1906 :
The learned court below on a petition in proper form declined to appoint overseers of election in the second division of the seventh ward of the city of Philadelphia on the ground that " the act of 1893 repealed the act of 1874 in so far as the act of 1874 made it mandatory upon the court to appoint overseers." The court in its opinion refusing to make the appointment said : " We think the court is not bound to appoint overseers upon the mere petition of citizens stating that in their opinion they believe that fraud will be perpetrated in the division without anything more. We realize, however, that under the constitution the power exists in the court—the right exists in the court—to appoint overseers whenever in their

judgment it is proper to do so, whenever there is a likelihood of fraud. In other words, that it is not a matter to be determined by five residents of the division, and after they have so determined it making it absolutely imperative that the court should appoint overseers, but that it is a matter which the court after hearing evidence can, if they believe the exigency of the case requires it, appoint overseers. In other words, the right in the court exists, but the duty to do so is not mandatory." As we understand the opinion, the court below does not hold that the entire act of 1874 has been repealed by the act of 1893, but only that part of the former act requiring the appointment of overseers of election. The petitioners have appealed and contend that the section of the act of 1874 providing for the appointment of overseers is still in force, that it is mandatory, and that the court on a proper application is required to appoint overseers. With that contention we concur.

The sixteenth section of article VIII of the constitution of 1874 authorizes the court of common pleas to appoint overseers of election " to supervise the proceedings of election officers and to make report to the court as may be required." The appointment is to be made upon the petition of five voters of the election district " setting forth that such appointment is a reasonable precaution to secure the purity and fairness of élections." The overseers are to be two in number, of different political parties, residents of the district, and are authorized when the election board differ in opinion and the overseers agree on the question in dispute to " decide the question of difference."

The fourth section of the Act of January 30, 1874, P. L. 33, 1 Purd. 746, provides that upon the presentation of a " petition of five or more citizens of any election district, setting forth that the appointment of overseers is a reasonable precaution to secure the purity and fairness of the election in said district, it shall be the duty of the court of common pleas of the proper county . . . . to appoint two judicious, sober and intelligent citizens of said district, belonging to different political parties, overseers of election to supervise the proceedings of election officers thereof, and to make report of the same as they may be required by such court." The duties and powers

of the overseers are prescribed by the same section of the act. They have the right " to be present with the officers of such election, during the whole time the same is held, the votes counted, and the returns made out and signed by the election officers; to keep a list of voters; . . . . to challenge any person offering to vote, and interrogate him and his witnesses, under oath, in regard to his right of suffrage at said election, and to examine his papers produced." The section requires the election officers to afford the overseers " every convenience and facility for the discharge of their duties," and makes it a misdemeanor for the officers to refuse to do so. It is also provided that all the votes of the district may be rejected on a contest " if the overseers shall be driven away from the polls by violence or intimidation."

This section of the act of 1874 was passed, as it clearly appears, to carry into effect section 16 of article VIII of the constitution. The court below and the learned counsel appearing for it here concede that the provisions of this section of the act are mandatory and not discretionary, and that under the act the court, on presentation of a proper petition, is required to appoint overseers.

The court below held, however, that part of the act of 1874 providing for the appointment of overseers was repealed by the Act of June 10, 1893, P. L. 419, 1 Purd. 747, for the reason that it was inconsistent with that part of the latter act providing for the appointment of watchers which, in the language of the court, " is evidently intended to take the place of the overseers provided for in the act of 1874." " The watchers have practically the same duties and the same rights (as the overseers)," says the court, " the main differences are that they must remain outside of the guard rail and are not to be paid from the public purse." It was this view of the duties and the rights of the overseers and watchers under the respective acts of assembly that led the learned court to an erroneous conclusion.

The act of 1893 was enacted, as its title discloses, " to regulate the nomination and election of public officers, requiring certain expenses incident thereto to be paid by the several counties, and punishing certain offenses in regard to such elections." It is known by the name of its author and is called

the "Baker Ballot Law." It provides, inter alia, a form of ballot, the manner of casting the ballot, for the erection of booths for the voters, and guard rails for inclosing the space set apart for the board and other officers at the polling place. By section twenty-three of the act, each political party "shall be allowed to appoint three electors to act as watchers in each voting place without expense to the county, one of whom shall be allowed to remain in the room outside of the inclosed space. Each watcher shall be provided with a certificate from the county commissioners stating . . . . the names of the persons who have appointed him and the party or policy he represents, and no party or policy shall be represented by more than one watcher in the same voting room at any one time." The rights of watchers at a polling place are prescribed by the act. They have the right to be in the voting room outside the inclosed space while the votes are being cast, and are permitted to keep poll books and challenge lists and to be present during the counting of the votes. These, and no other rights, are conferred on watchers by the act of 1893, and that act imposes no duties whatever upon watchers. In what respect, then, is the position of watchers inconsistent with that of overseers required to be appointed by the court under the act of 1874 ? The learned court, as we have seen, says that watchers have practically the same duties and the same rights as overseers. This is manifestly incorrect, as is clearly disclosed by reference to the rights conferred and duties imposed on each by the acts of 1874 and 1893. The only rights of watchers, as just pointed out, are permission to be outside of the guard rail in the voting room during the polling and counting of the votes, and to keep poll books and challenge lists. Every voter has the right to keep a poll book and challenge list, and therefore the only right conferred by the act on watchers which they did not possess as voters was to be in the voting room. As to duties and authority, absolutely none are conferred on them by any legislation. They receive no compensation from the county or election district for their services.

Now recurring to overseers of election, we see they are appointed by the court of common pleas in pursuance of the act of 1874, passed to carry into effect a constitutional provision

fixing their qualifications and prescribing their duties and powers. The purpose of their appointment, as declared by the constitution, is "to supervise the proceedings of election officers and to make report to the court as may be required," in . order "to secure. the purity and fairness of elections." They are authorized when they agree, to decide all differences arising among the members of the election board. The authority thus conferred does not belong to watchers appointed by the political parties, and if attempted to be conferred by statute would be in derogation of the authority vested in the election board by the constitution. We need not discuss or determine the extent of the duties and powers conferred on overseers, as it is not involved in this controversy and is referred to merely to draw the distinction between them and such persons as watchers who hold their position by virtue of an appointment by a political party. In addition to the large powers conferred on overseers by the constitution, the act of 1874, passed in pursuance of the constitutional provision, gives them, as we have seen, the right to be present with the election officers during the time the latter are engaged in receiving and counting the votes and making out and signing the returns, to challenge any person offering to vote and interrogate him and his witnesses, under oath, in regard to his right of suffrage as well as to examine any papers the voter may produce. The overseers are required to certify the returns or note upon each return their reasons for not certifying it. They are intended to be what their name indicates, "overseers," and their duty is to oversee or supervise the proceedings of election officers and, when required, to report to the court. The election board is required to afford overseers every facility for the discharge of their duties, and if by violence or intimidation they are driven from the polls the entire vote polled at that district may be rejected. It is scarcely necessary to suggest that none of these extensive powers is conferred on watchers. They are simply permitted to be present during the time the votes are cast and counted. They have no authority and none can be conferred by statute empowering them to supervise or otherwise interfere with the board in the conduct of the election. Their rights may be termed passive, and, like overseers, they are what their name implies, "watchers."

Unlike overseers, they are not appointed by the court, they are not amenable to it, and they are not required to report to it. They hold their position solely by virtue of an appointment by a political party to which good faith and political honesty require them to be true but to which they are not legally responsible. They are not even officers, such as are known to the law, but simply the agents of the party which appoints them to protect its political interests at the polls, and whom the law permits to be present in the voting room for that purpose without compensation and without any authority or control over the proceedings of the election officers.

It is clear from the above comparison of the rights, duties and powers of overseers with the rights of watchers appointed respectively under the acts of 1874 and 1893, that the rights, powers and duties of the two positions are not the same and that it was not the intention that watchers should take the place of, or supersede, overseers in supervising the proceedings of election officers. It is argued, however, in the opinion of the court below, that the part of the act of 1874 authorizing the appointment of overseers is repealed by the act of 1893, because it provides that "by explicit language no one except those mentioned in the act of 1893, are allowed in the room, none but election officers inside the guard rail, and no one is allowed to communicate with an election officer in any way during the counting of the vote." But this argument is met by the argument of the appellants that the right of overseers to be present in the inclosed space provided exclusively for the officers of election is specifically recognized by section twenty-one of the act of 1893, which provides, inter alia, as follows: "Besides the election officers and such supervisors as are authorized by the laws of the United States or overseers appointed by the courts of this commonwealth, no more than four voters in excess of the number of voting shelves or compartments provided, shall be allowed in said inclosed space at one time." The sections of the act bearing directly on this question are apparently inconsistent, but, keeping in view the purpose of both acts and the constitutional mandate, they may be reconciled. It will not be presumed that the legislature in passing the act of 1893, intended to offend against the constitution; on the contrary, we must, if possible, construe the act so that

its provisions will be within the terms of the instrument. If we hold with the court below that by the act of 1893, overseers are excluded from the inclosure set apart for the election officers in the voting room, then it is apparent that the act deprives the overseers of an opportunity to perform, and in effect prohibits them from performing their constitutional duties " to supervise the proceedings of election officers." If some parts of the act are to be read literally and not in connection with other parts of the statute, overseers cannot go within the inclosed space where the election officers perform their functions. This would necessarily prevent overseers from performing the duties enjoined on them by the sixteenth section of the eighth article of the constitution which requires them not only " to supervise the proceedings of election officers," but also " to decide the question of difference " when the members of the election board shall differ in opinion. The presence of the overseers within the inclosure set apart for the board is absolutely necessary to enable them to perform their constitutional duties and, as that instrument requires, " to make report to the court as may be required." The act of 1893 will, as a whole, bear this interpretation, and it is the duty of the court to hold that such was the legislative intent. This being the proper interpretation of the statute, its provisions are not in conflict with the act of 1874, and hence the latter act was not repealed by the later statute, and is still in force.

The illustration of the inconvenience of having two overseers in addition to the watchers present at the election, suggested by the learned counsel representing the court below on this appeal, may be misleading. If there were five political parties, there would be five and not fifteen watchers in the voting room, and if there were eight parties there would be eight and not twenty-four watchers in the room. While each political party may appoint three watchers to be present at each election district, the act of 1893 provides that " only one . . . . shall be allowed to remain in the room outside of the inclosed space . . . . and no party or policy shall be represented by more than one watcher in the same voting room at any time." The learned counsel's argument ab inconvenienti does not appeal to us with any force whatever on the question of legislative intent in the enactment of the act of 1893. That

argument can never be successfully invoked in a court of justice to defeat the operation of a statute enacted to carry into effect a constitutional provision intended to safeguard the elective franchise.

The desire of the learned judge below, so frequently suggested in his opinion, to protect the city of Philadelphia from unnecessary expenditure of money is commendable, and his argument in favor of greater economy in election expenses will receive the hearty approbation of the taxpayers of the city. But we must assume that the framers of the constitution and the people, who by their votes adopted that instrument as the fundamental law of the commonwealth, well understood the expense which would be incurred for the services of two overseers in each election precinct of the state, and that the additional expense thus entailed was regarded as infinitesimally small in comparison with the object to be attained by the services of these officers which, in the language of the constitution, was " to secure the purity and fairness of elections." Economy in the expenditure of money cannot be considered when it may prevent or endanger the sanctity and the purity of the ballot box.

We are of opinion that the act of 1893 did not repeal that part of the act of 1874, providing for the appointment of overseers of elections, and that the court below was in error in declining to appoint overseers on the petition presented by the appellants. As the election has passed for which the appointment of overseers was requested, we need not, in reversing, award a procedendo.

The order of the court below refusing to appoint overseers of election in the second division of the seventh ward of the city of Philadelphia is reversed.