PAUL W. PREISLER, Appellant, v. PAUL C. CALCATERRA, CLIFFORD G. HALEY, HARRY SCHENDEL and SIGMUND M. BASS, as Members of the Board of Election Commissioners of the City of St. Louis; THE CITY OF ST. LOUIS, a Municipal Corporation, and J. E. TAYLOR, Attorney-General of the State of Missouri, Respondents, No. 41972—243 S. W. (2d) 62.

Court en Banc, November 12, 1951.

*John Wayne Jones* and *Jerome W. Sidel* for appellant; *Louis Gilden* of counsel.

*James E. Crowe,* City Counselor, and *Charles J. Dolan,* Associate City Counselor, for respondents.

HYDE, J.—Action for declaratory judgment by Chairman of the City Central Committee of the Socialist Party on behalf of the Party and its members in the City of St. Louis and as a citizen, voter and taxpayer. A decree was sought declaring that the Socialist Party was entitled to have challengers and watchers at the polls in the City of St. Louis during general elections in which the Party participates; and that Section 118.510 (references are to R. S. 1949 unless otherwise specified), limiting such right to parties having representation on the Board of Election Commissioners, was unconstitutional. The trial court declared this statute valid and plaintiff has appealed.

The case was tried on an agreed statement of facts. At the general election in 1936, prior to the enactment of the statute (now Section 118.510) in 1937 (Section 43 of the Act providing for Permanent

Registration of Voters and for Holding of Elections in all Cities of 600,000 or More Inhabitants, Laws 1937, p. 235, at pages 261-262) each one of the political parties had the privilege of having challengers and watchers at elections in the City of St. Louis by virtue of Section 10613, R. S. 1929. (Section 49 of the Act of 1921 providing for Registration and Elections in Cities having 100,000 Inhabitants or Over.) The Socialist Party, "a bona fide political party," had in 1936 designated challengers and watchers whom the Board of Election Commissioners had allowed to serve at the polls in the City. However, at and after the general election of 1938, subsequent to the enactment of Section 118.510 in 1937, and because of the provisions of Sections 118.040 and 118.510, the defendants, Board of Election Commissioners, have refused to permit challengers and watchers designated by the Socialist Party to be present and serve at general elections in the City, the defendants having taken the position (which they reassert in this court) that the Socialist Party has no such right or privilege.

Section 118.040, applicable to the City of St. Louis, creates a Board of Election Commissioners composed of four members. It is provided that two members of the Board "shall belong to the political party who shall have cast the highest number of votes for their candidate for governor at the last general election," and two "shall belong to the political party who shall have cast the second highest number of votes for their candidate for governor at the last general election." Section 118.510, provides that at every registration and election each one of the political parties *"having representation on the board"* of election commissioners "shall have the right to designate and keep a challenger at each place of registration, revision of registration and voting"; and that each political party *"having representation on the board"* shall, at the close of the polls, "have the right to the admission of two persons of their political faith into the room where such ballots are to be canvassed to watch such canvass."

Defendants' claim that Section 118.510 in providing for challengers and watchers to the two dominant political parties (as determined by the votes cast "for governor at the last general election," Section 118.040) does not confer any special right to the two dominant parties or to electors affiliated with such parties, but on the contrary such Section safeguards the votes of all electors of *all* parties, as well as the votes of nonpartisan voters. Defendants say that Section 118.510 is part of the theory of the legislative plan of "bipartisan election officials and bipartisan challengers and watchers" whereby the rights of all voters, regardless of their party affiliation, are protected in their right to vote and to have their votes duly counted and recorded as cast. Defendants further say it is "manifest that neither of the dominant parties stands to gain anything from failure to count votes cast for minor parties", and suggest that the reason the

legislature limited challengers and watchers to representatives of the two dominant political parties "may have been * * * difficulty in finding polling places with rooms large enough to accommodate a large number of watchers."

Plaintiff points out that in no other part of the State is there any discrimination against any party as to challengers or watchers. Section 111.610, applicable to all election precincts in the State except as otherwise specified, provides "that any political party may select a representative man who may be admitted as a witness of such counting." Section 113.200, applicable to St. Louis County, provides: "each of the political parties shall have the right to designate and keep a challenger during the hours of * * * voting, and a watcher during the counting of the ballots in each place of * * * voting." (See also Section 113.870.) Section 117.590, applicable to Kansas City, provides that "each one of the political parties shall have a right to designate" a challenger, for both inside and outside of each polling booth, and also that "each of the political parties casting votes at such polls * * * shall have the right to the admission of two persons of their political faith * * * to watch" the canvass of the ballots. It is also provided by Section 125.100, applicable to the whole State, that in any election, at which a proposed constitutional amendment or statute is submitted to the voters, the county or city campaign committees, favoring and opposing the proposition, shall each "have the right to designate and keep a challenger at each place of voting" who also may "be present during the canvass and counting of the votes." Thus it has always been the policy of our election laws to treat all interested parties alike. Plaintiff further points out that in the Twelfth Congressional District, partly in St. Louis County and partly in the City of St. Louis, his party may, under Section 113.200, have a challenger and watcher at a congressional election in those precincts in the county but is prohibited by Section 118.510 from having them in the city at the same election.

Plaintiff contends that Section 118.510 conflicts with the following provisions of our 1945 Constitution: Sec. 25, Art. I providing that all elections shall be free and open; and Sec. 2, Art. I providing that all persons are entitled to equal rights and opportunity under the law. He also contends that it violates the provision of the 14th Amendment to the Constitution of the United States that no State shall deny any person the equal protection of the laws. On the first provision, plaintiff cites State ex rel. Preisler v. Woodward, 340 Mo. 906, 105 S. W. (2d) 912, in which we held the guaranty of free and open elections protects the right of any eligible citizen to become a candidate for public office. (See also State ex rel. Neu v. Waechter, 332 Mo. 574, 58 S. W. (2d) 971; State ex rel. Haller v. Arnold, 277 Mo. 474, 210 S. W. 374.) It has also been said that the language "free and open" contained in Section 25, Article I, Con-

stitution of 1945; in Section 9, Article II, Constitution of 1875; and in Section XIV, Article I, Constitution of 1865 is substantially the same as "free and equal" contained in Section 6, Article XIII, Constitution of 1820. (Isidor Loeb, "Introduction," Vol. II, Debates Missouri Constitutional Convention, 1875.) "The guaranty, therefore, means that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind and that his vote, when cast, shall have the same influence as that of any other voter." (18 Am. Jur. 184, Sec. 8.) However, we do not see how this provision reaches the question of challengers and watchers of political parties. Recognizing these rights of citizens as candidates and voters, nevertheless, we cannot hold that Section 118.510, in exclusively providing to the two dominant political parties the right or privilege of designating and keeping their challengers and watchers at elections, violates Section 25, Article I.

■ However, Section 118.510 does seem to violate the provisions of our State and Federal Constitutions for equal rights ■ and equal protection. The United States Supreme Court has said: "The guaranty 'of equal protection of the laws is a pledge of the protection of equal laws.' " (See Skinner v. State of Oklahoma, 316 U. S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655.) The difference in treatment of political parties in St. Louis and elsewhere in the State appears to be arbitrary and without any reasonable basis. We recognize there is a problem of space in polling places to accommodate challengers and watchers of too many political parties. Certainly, there may be need for regulation as the provision for challengers and watchers cannot be extended to every independent or nonpartisan candidate who may be entitled to get on the ballot. We do not doubt the authority of the Legislature to control this by fixing reasonable standards to be met by parties to be entitled to challengers and watchers or even to get their candidates on the ballot. The validity of such limitations on the basis of requiring more than a small minimum percentage of the vote cast at the last election for such privileges, or in lieu thereof petitions signed by a certain number or percent of the voters, has become well established. (18 Am. Jur. 291, Sec. 168.) Since Section 118.510 fixes no standards but arbitrarily confers these privileges upon only the two largest parties we cannot uphold its validity.

A somewhat similar case is State ex rel. Witt v. Bernon, Ohio Appeals, 8th Dist., 11 O. L. A. 318. The Court considered therein a statute of sufficiently broad language to lodge discretion in the members of the Board of Elections to allow challengers and witnesses in each precinct at nonpartisan primary elections. The Court was of the opinion that (when several candidates for the office of mayor of a city appear on the ballot) to allow challengers and witnesses to any one candidate "and at the same time disallow it as to other candidates

would constitute a gross abuse of discretion and would be violative of the equal protection clauses of the Federal Constitution and the State Constitution."

Defendants' contention that Section 118.510 is part of the legislative plan of "bipartisan election officials," and provides "additional checks and balances" under the bipartisan system of conducting elections, overlooks the fact that challengers and watchers are not election officials or public officers of any kind. They have no official or public duties whatever. While the sworn officers of election have *bi*partisan qualifications in that they are appointed from the two dominant parties, these sworn officers have strictly *non*partisan public duties of conducting fair and impartial elections. It is well established in Missouri and elsewhere that the legislature in delegating the appointment of the Board of Election Commissioners to the Governor under the provisions of Section 118.040, had the power to prescribe the political qualifications of the Governor's appointees, officers, in effectuating the legislative intent to establish "a nonpartisan election board." (State ex rel. Harvey v. Wright, 251 Mo. 325, 158 S. W. 823; State ex rel. Buttz v. Marion Circuit Court, 225 Ind. 7, 72 N. E. (2d) 225; Annotations, 140 A. L. R. 471, at page 477, 170 A. L. R. 198; 18 Am. Jur. 202, Sec. 34; 29 C. J. S. 80, Sec. 60.) These election officers are public officers with public duties of the highest type, namely: to safeguard for all voters the constitutional guaranty of free and open elections.

Challengers and watchers are in no sense public officials charged by law with the responsibilities of conducting fair and impartial elections, "free and open." They are not even under oath. And they are not subject to the penalties provided by Chapter 118, supra, as are the appointive officials of elections. They may or may not be in attendance at the polls. Their function is *partisan*, not *non*partisan in character. The Supreme Court of Pennsylvania pointed out these distinctions in stating the difference between "overseers" and "watchers" of elections in Pennsylvania, in In re Parrish, 214 Pa. 63, 63 Atl. 460. The overseers were, by Constitutional authority, appointed by the Court of Common Pleas. The watchers were appointed by each political party under authority of statute. The overseers had the duty and authority to supervise the proceedings of election officers ▮▮▮ and to make report to the Court as required, in order *"to secure the purity and fairness of elections."* The Court said watchers, unlike overseers, "are not appointed by the court, they are not amenable to it, and they are not required to report to it. They hold their position solely by virtue of an appointment by a political party, to which good faith and political honesty require them to be true, but to which they are not legally responsible. *They are not even officers, such as are known to the law, but simply the agents of the party which appoints them to protect its political in-*

*terests at the polls,* and whom the law permits to be present in the voting room for that purpose, without compensation and without any authority or control over the proceedings of the election officers.'' (Our italics.)

We must, therefore, hold Section 118.510 unconstitutional as an arbitrary violation of the equal protection provisions of our State and Federal Constitutions. It has been suggested that the clause ''having representation on the board'' might be held unconstitutional and the rest of Section 118.510 held valid. By Section 90 of the Act of 1937 (Laws 1937, page 278) the legislature declared it would have passed the Act and each section, subsection, sentence, clause and phrase, ''irrespective of the fact that any one or more other sections, subsection, sentences, clauses or phrases be declared unconstitutional.'' However, if the elimination of such clauses leaves the remaining portions of the statute so that they do not express the true legislative intent but are instead in conflict with it, the statute should not be upheld. (State ex rel. McDaniel v. Schramm, 272 Mo. 541, 199 S. W. 194; State ex rel. Rolston v. Chicago, B. & Q. R. Co., 246 Mo. 512, 1. c. 517, 152 S. W. 28; State ex rel. Tolerton v. Gordon, 236 Mo. 142, 1. c. 170, 139 S. W. 403; State ex inf. McKittrick v. Cameron, 342 Mo. 830, 1. c. 838, 117 S. W. (2d) 1078; State ex rel. Transport Mfg. and Equipment Co. v. Bates, 359 Mo. 1002, 224 S. W. (2d) 996; 11 Am. Jur. 848, Sec. 156; 16 C. J. S. 249, Sec. 98.) As said in the Schramm case (272 Mo., 1. c. 553): ''If, by striking out a void exception, proviso, or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent and the whole would be affected and made void by the invalidity of such part.''

It seems obvious that to strike out these clauses in Section 118.510 would broaden its scope as to subject matter because it would make it include all political parties in its authorization for challengers and watchers when the clear legislative intent was to confine it to only two. We must, therefore, declare the whole section unconstitutional. However, this does not mean that the City of St. Louis is left without any law providing for challengers and watchers. Such provisions of the Act of 1921 (Sec. 10613, R. S. 1929) were not expressly repealed since the repealing clause of the 1937 Act (Sec. 89, Laws 1937, p. 278) provided only generally for repeal of ''acts or parts of acts contrary to; in conflict or inconsistent with the provisions of this act.'' As to this, we said in the Cameron case (342 Mo. 1. c. 839): ''The rule is that where the repealing clause is incidental to the rest of the act and the act is unconstitutional, the repealing clause is likewise invalid and the prior general law is left unrepealed.'' We, therefore, further hold that, since Section 43 (Sec. 118.510) of the

Act of 1937 is invalid, Section 49 of the Act of 1921 (Sec. 10613, R. S. 1929) is still in force and effect as to the City of St. Louis.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in accordance with the views herein expressed. All concur.