Ruth MacGUIRE, Plaintiff-Appellant,

v.

Charlotte HOUSTON, Boulder County
Clerk and Recorder,
Defendant-Appellee,

and

Duane Woodard, Attorney General of
the State of Colorado,
Defendant-Intervenor-Appellee.

No. 84SA78.

Supreme Court of Colorado,
En Banc.

April 21, 1986.

Charles E. Norton, Charles Hecht, Calkins, Kramer, Grimshaw & Harring, Denver, for plaintiff-appellant.

Ann T. Raish, Boulder Co. Atty., William F. Nagel, Deputy Co. Atty., Boulder, for defendant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice G. Knaizer, First Asst. Atty. Gen., Kristie A. Hansen, Asst. Atty. Gen., Denver, for defendant-intervenor-appellee.

**DUBOFSKY, Justice.**

The plaintiff Ruth L. MacGuire appeals an order of the Boulder County District Court denying her request for a declaratory judgment. The district court ruled that the statute restricting the opportunity to serve as an election judge to persons who have affiliated with one of two major political parties did not violate the plaintiff's freedom of speech and association or her right to equal protection of the laws. We affirm the ruling of the district court.

### I.

The facts in this case are not in dispute. On October 6, 1980, the plaintiff, a member of the Socialist Party, wrote to the Boulder County Clerk and Recorder requesting appointment as an election judge for the general election to be held on November 4, 1980.[1] On October 20, 1980, the defendant Charlotte Houston, Boulder County Clerk and Recorder, responded by noting that election judges must be affiliated with a major party and that MacGuire could submit her name to a major party committee chairman and the clerk and recorder if she affiliated at some future date.[2] MacGuire also attempted to become an election judge in 1982 but Houston responded that MacGuire's name could only be placed on the election judge list if MacGuire affiliated with one of the major parties.[3]

---

1. MacGuire's letter contained the following request:

 I should like to apply for the post of election judge or alternate for the general election November 4th. (I saw the request in the Boulder Daily Camera.) If there are no openings, please put me on the waiting list for future elections.

 I am a registered independent voter in Boulder, and have lived here for over 18 years.

 Please let me know in writing from your office as soon as possible. Thank you for your consideration.

2. Houston's reply to MacGuire's letter was as follows:

 I'm sorry your letter did not reach me personally and appreciate your calling it to my attention.

 I am including a copy of the law regarding election judges. 1-3-101, 1-3-104, 1-3-105, 1-3-106 will be of interest. As stated in these sections the judges must be affiliated.

 Perhaps you would want to affiliate at some future date and submit your name to the party or this office.

3. In 1982 Houston responded to MacGuire's request for appointment as an election judge as follows:

 Colorado statutes provide the procedure for appointment of election judges. 1-5-101 and

Election judges supervise voting, count the ballots, and make returns at general, primary, and congressional vacancy elections. § 1–5–104(1), 1B C.R.S. (1980). They are paid not less than twenty-five dollars nor more than fifty dollars for their services during any election. § 1–5–112, 1B C.R.S. (1980). The clerk and recorder of each county appoints the election judges from lists submitted by "each major political party." § 1–5–101, 1B C.R.S. (1980); § 1–5–107, 1B C.R.S. (1980).[4] A "major political party" is defined as "one of the two political parties whose candidate for governor at the last preceding gubernatorial election received the first and second greatest number of votes." § 1–1–104(15), 1B C.R.S. (1980). The county chairman of the major political party may only submit to the county clerk and recorder names of persons affiliated with that political party. See § 1–5–106, 1B C.R.S. (1980); § 1–5–107. If the county chairman of the major political party does not submit names, the county clerk and recorder may select the election judges but may only appoint those who are affiliated with a major party. § 1–5–107. MacGuire and Houston agree that under the present statutes MacGuire may not be appointed as an election judge until the Socialist Party obtains the first or second greatest number of votes in an election for governor.

MacGuire filed a complaint in Boulder County District Court alleging that the statutes concerning election judges violated her rights under the first amendment of the United States Constitution and Article II, Section 10, of the Colorado Constitution and her right to equal protection of the law under the fourteenth amendment to the United States Constitution and Article II, Section 25, of the Colorado Constitution. At trial MacGuire testified that she was a member of the Socialist Party of the United States and served as chairman of the five member Boulder County chapter of the party. She estimated that there were between twelve and twenty members of the Socialist Party in Colorado. She testified that participatory democracy was a basic tenet of the Socialist Party and that she wanted to take part in the "checks and balances" of the election process.

The district court held that the limitation on the plaintiff's ability to serve as an election judge was a "collateral restriction" that "does not appear to impact [her] ability to express her political views." The court ruled that although a substantial impairment of associational rights such as loss of a full time job or inability to vote would require it to review the statutory scheme with strict scrutiny, the restraint imposed in this case was less restrictive than those found to violate the first amendment in other cases. The court therefore reviewed the statutes under a rational basis test. The district court found that "the challenged election judge provisions are rationally related to the ends of efficiently running an election" because the major political party requirement, which means that one Democrat and one Republican are assigned to work in "antagonistic" pairs, provides a system of checks and balances that "is supposed to give an appearance of propriety to the voters." The district court also dismissed MacGuire's equal protection claim, ruling that because of the lack of a significant impact upon MacGuire's fundamental rights, the state need only justify its classification as rationally related to a legitimate state goal. The district court determined that the requirement that election judges be from major political parties was rationally related to the state's goal of preserving the integrity of the election pro-

1–5–107 specify the procedures. I am enclosing copies of these sections.

I must follow the law.

If you wish to affiliate, I would be glad to place your name on our list of potential judges.

**4.** Sections 1–5–101 and 1–5–107 were repealed and reenacted by chapter 43, section 1, 1980

Colo.Sess.Laws 293, 335, and 336–337, respectively. Both sections were amended, Ch. 49, sec. 9, 1985 Colo.Sess.Laws 247, 250, and Ch. 49, sec. 11, 1985 Colo.Sess.Laws 247, 251, to change the date by which election judges must be appointed.

cess. The plaintiff appealed the district court's ruling to this court.[5]

## II.

■ MacGuire first asserts that the restriction on eligibility to serve as an election judge to those who are affiliated with a major political party significantly impairs her fundamental right of association with the Socialist Party and therefore must be subject to strict scrutiny. However, not all restrictions imposed by the states on voters' rights to associate impose constitutionally suspect burdens. *See Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In *Anderson*, the Court noted that if elections are to be fair, honest, and orderly, states must substantially regulate them and that comprehensive and complex state election codes inevitably affect an individual's right to associate with others for political ends. 460 U.S. at 788, 103 S.Ct. at 1569. The Court therefore refused to apply strict scrutiny mechanically to challenges to state election laws:

> Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of these interests, it must also consider the extent to which those interests make it necessary to burden a plaintiff's rights. Only after weighing all these factors is the

reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570 (citations omitted). Thus in this case we first consider the character and magnitude of the injury to MacGuire's first amendment right to association and then evaluate the state's justification for the requirement that election judges be affiliated with one of the two major political parties.

■ It is undisputed that the freedom to associate for the advancement of political beliefs is a fundamental right. *Illinois State Board of Elections v. Socialist Worker's Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *see Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). As described by the United States Supreme Court, "political belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) (plurality opinion) (footnote omitted). Only significant and substantial restraints on the freedom of association require strict scrutiny, however. *See Kusper v. Pontikes*, 414 U.S. at 57–59, 94 S.Ct. at 307–308.

Despite the fact that becoming an election judge is a way of participating in the political process, the statutory restrictions on the appointment of election judges do not interfere with MacGuire's ability to express her political views and MacGuire is not being denied full-time public employment. MacGuire is ineligible to work as an election judge for a maximum of two days every other year and to receive the statutory twenty-five dollars to fifty dollars wage for work during an election. Other courts considering restrictions on the appointment of voter registrars and members of county boards of election have concluded that, absent an impact of some substance on fundamental rights, the restrictions need only be rationally related to a legit-

---

**5.** Section 13–4–102(1)(b), 6 C.R.S. (1973), places jurisdiction of cases in which the constitutional-

ity of a statute is questioned in this court.

imate state interest.[6] The injury to MacGuire's right of association for political purposes is not of such a character and magnitude to require strict scrutiny. Therefore, in reviewing MacGuire's claim, we inquire only whether there is a rational relation between legitimate interests put forward by the state and the restrictions imposed on MacGuire.

 The state asserts that the provisions for selecting election judges serve the important state interest of preventing corruption or the appearance of corruption at the polls through a balanced oversight system that assures voters of the integrity of the electoral process. We agree with the district court that the system in which one Democrat and one Republican are assigned to work in pairs as election judges gives the appearance of propriety to the voters and the antagonism between the two parties results in a system of monitoring. Pairing antagonistic party members would become vastly more complicated if the state were forced to appoint minor political party members, who are registered unaffiliated, as election judges.[7] Because we find that the restriction on MacGuire's right of association for political purposes is not substantial and that the legitimate concerns and interests of the state are rationally related to the restrictions, we uphold the district court's ruling that the challenged portions of the election code do not unconstitutionally restrict MacGuire's right of association.[8]

6. See Coalition for Sensible and Humane Solutions v. Wamser, 590 F.Supp. 217 (E.D.Mo.1984) (first amendment does not require appointment of members of minority and low-income association as voter registrars), aff'd, 771 F.2d 395 (8th Cir.1985); Pirincin v. Board of Elections, 368 F.Supp. 64 (N.D.Ohio) (first amendment and equal protection do not require appointment of minority party members, blacks, or women to county boards of election), aff'd mem., 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231 (1973); cf. Baer v. Meyer, 728 F.2d 471 (10th Cir.1984) (having poll watchers from every party is not a vital interest for constitutional access to the voting process); Rhode Island Minority Caucus, Inc. v. Baronian, 590 F.2d 372 (1st Cir. 1979) (disqualifying voter registrars because they are not affiliated with an organization raises a substantial first amendment claim but court does not determine level of scrutiny required); La Raza Unida v. New Mexico, 577 F.2d 677 (10th Cir.1978) (claim that restrictions on selection of members of precinct election boards violates first and fourteenth amendment does not require convening three-judge court); Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62 (1951) (failure of election commission to appoint Socialist Party members as poll watchers is arbitrary treatment that violates equal protection).

7. Betty Chronic, the director of the Colorado Secretary of State's election division, testified at trial that a minimum of 12,500 election judges are required for each statewide election. Figures from the secretary of state's office showed that in 1982 unaffiliated voters accounted for 36 percent of the registered voters in the state and 44 percent of the registered voters in Boulder County. Chronic testified that "the vast majority" of the unaffiliated group lived in "a household that is affiliated already" because sections 1–2–202 and 1–2–203(2)(j), 1B C.R.S. (1985 Supp.), allow a registered elector to register any eligible members of his or her family who reside at the same address without declaring the party affiliation of the family members. Chronic concluded that persons shown in the unaffiliated group may view themselves as Republicans or Democrats, and the use of unaffiliated voters as election judges might destroy the check and balance system intended by the concept of antagonistic pairs. Since Chronic testified in this case the United States Court of Appeals for the Tenth Circuit has required Colorado to allow listing on voter registration forms of a party designation other than Democratic or Republican if the affiliation is with a political organization that has previously placed a candidate on the ballot by petition. Baer v. Meyer, 728 F.2d 471 (10th Cir.1984). The court specifically limited the required listing to the Citizens Party of Colorado and the Libertarian Party of Colorado, observing that "the record fairly reflects that no other political organizations have managed to field candidates in recent elections." Id. at 476. Thus, MacGuire's minority political party affiliation remains indistinguishable from the remaining unaffiliated registrations for purposes of selection of election judges.

8. MacGuire also asserts that a public employee may not be fired from his or her job because of political beliefs or political associations. Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Elrod, 427 U.S. 347, 96 S.Ct. 2673; Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Under certain circumstances, however, political affiliation is relevant if the position involves confidential information or is policy making or political in character. Branti, 445 U.S. at 518, 100 S.Ct. at 1294. In this case, because of the state's interest in preventing corruption or the appear-

## III.

■ MacGuire also asserts that the statutory classification allowing members of major political parties to exercise a role in elections denied to members of all other political parties violates the guarantee of equal protection because the classification burdens her fundamental right to associate for political purposes. Because the challenged statutes restrict her fundamental right to associate for political purposes, MacGuire argues that the restrictions may only be justified by a compelling state interest and that this court must inquire into whether there are less burdensome alternatives to protect state interests than the measures adopted by Colorado.

In *Illinois State Board of Elections*, the United States Supreme Court analyzed the denial of equal protection claim as follows: "we must examine the character of the classification in question, the importance of the individual interests at stake, and the state interests asserted in support of the classification." 440 U.S. at 183, 99 S.Ct. at 989. The classification in this case is based on political affiliation, and the freedom to associate with a political party is a fundamental right. *Illinois State Board of Elections*, 440 U.S. at 184, 99 S.Ct. at 990. Generally, if a state restriction affects a fundamental right, the state has the burden of establishing that the act is necessarily related to a compelling interest. For example, restrictions that prevent or limit ballot access to new or minority political parties are subject to strict scrutiny. *See Blomquist v. Thomson*, 739 F.2d 525 (10th Cir.1984). However, not every impact on a fundamental right requires strict scrutiny. *See Bullock v. Carter*, 405 U.S. 134, 143,

92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). For instance, the United States Court of Appeals for the Tenth Circuit held that allowing representatives from each candidate's party to be election judges in Colorado is not a vital interest for constitutional access to the voting process. *Baer v. Meyer*, 728 F.2d 471 (10th Cir.1984).

■ In this case, the classification based on political affiliation does not inhibit MacGuire's ability to join her chosen political party, to vote for that party's candidate, or to freely advocate that party's platform. Because the impact on MacGuire's rights to associate for political purposes is not significant or substantial, we only consider whether the state action is rationally related to a legitimate state purpose. Again, we agree with the district court that the challenged election judge provisions are rationally related to the legitimate ends of efficiently running an election and that pairing Democrats and Republicans as election monitors provides an appearance of propriety to the voters.[9]

## IV.

■ MacGuire also asserts that the restrictions on eligibility to serve as an election judge violate her rights under the Colorado Constitution. The Colorado Constitution, like the United States Constitution, protects the fundamental freedoms of association, political belief, and political participation. MacGuire suggests that this court construe the Colorado Constitution as providing greater protection than required by the United States Constitution because sections 1 and 5 of article II of the Colorado

---

ance of corruption, political affiliation is an appropriate consideration in appointing election judges. *Cf. Avery v. Jennings*, 786 F.2d 233 (6th Cir.1986) (informal Republican patronage system that led to failure to consider Democrat for clerical position placed limited burden on associational rights of prospective job applicants and did not rise to level of constitutional deprivation); *Mirabella v. Board of Elections*, 507 F.Supp. 338 (S.D.N.Y.1980) (failure of Republican party committee chairman to reappoint Re-

publican election inspectors as a result of an intraparty feud is not an abuse of discretion because intraparty affiliation may be taken into account).

9. Because we analyze the challenged restriction under the rational relationship standard, we need not inquire whether there are less burdensome alternatives to protect the interests of the state. *See Lujan v. Colorado State Board of Education*, 649 P.2d 1005, 1016 (Colo.1982).

Constitution [10] protect the right of participation and provide for free and open elections. We decline to do so. The restrictions on the selection of election judges do not interfere substantially with MacGuire's associational rights: she may circulate petitions proposing laws and freely cast her vote without coercion, and her vote has the same influence as any other vote. *See Colorado Project-Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972); *Littlejohn v. People ex rel. Desch,* 52 Colo. 217, 121 P. 159 (1912); *Preisler v. Calcaterra,* 362 Mo. 662, 243 S.W.2d 62 (1951). We are not persuaded that the Colorado constitutional provisions for participation and free and open elections require that unaffiliated voters or members of minority political parties be eligible to serve as election judges.

Judgment affirmed.

**10.** Article II, section 1, of the Colorado Constitution provides as follows:

All political power is vested in and derived from the people; all government, of right, originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.

Article II, section 5, of the Colorado Constitution provides as follows:

All elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.