[No. 7498.]

### LITTLEJOHN v. THE PEOPLE EX REL.

CONSTITUTIONAL LAW—*Elective Franchise—Legislative Power in Restricting Exercise.* Under the constitution (Sec. 5, Art. 21, Sec. 1, Art. VII,) every qualified elector has the equal right to cast a ballot for the person of his own selection, and nothing can lawfully prevent the exercise of this right. Legislative regulation of the franchise cannot extend to deny its exercise, or trammel by conditions so difficult or inconvenient as to amount to a denial. Accordingly held that portion of Sec. 5919 of the Revised Statutes which provides that at election for school directors "no person other than those whose names appear upon the ballot"—prepared by the secretary—"shall be voted for," is unconstitutional—(220-224).

The legislation distinguished from the Australian ballot acts —(225, 226).

*Error to Mesa District Court.*—HON. SPRIGG SHACKLEFORD, Judge.

MESSRS. BUCKLIN & TUPPER, MR. GEORGE BULLOCK, MR. S. M. LOGAN, MR. N. C. MILLER, for plaintiff in error.

MESSRS. FRY & WELSH, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court:

This controversy is over the right to the office of school director of District No. 1 of Mesa county. The

district is of the first class. At the general school election held therein in May, 1910, plaintiff in error and one Moses T. Hale filed their respective notices of intention to become candidates for the office of school director, in accordance with Section 5919 R. S. The secretary of the school district, five days before such election, pub-lished a notice of such filings. Thereafter, and subsequent to the expiration of the time persons could signify their intention to become candidates as provided by the section, Moses T. Hale withdrew, and resigned as a candidate. . Thereupon the secretary published a notice of such withdrawal, and that Littlejohn "is now the only candidate."

At the election, two forms of ballots were used: one, with the name of the plaintiff in error, F. M. Littlejohn, printed thereon: the other, with the name of relator, C. S. Desch, printed thereon. The former was prepared by, and under the direction of, the secretary of the school district, but without any official mark of identification. The latter was not so prepared. The ballots were of the same size, shape, color, and quality of paper, and were identical, except the names printed thereon. No provision was made upon the ballots, nor was there reasonable space thereon, for a voter to write the name of any other person for whom he might desire to cast his vote. Both forms of ballots were placed upon a table in the polling place within view of the judges of election, and were also indiscriminately distributed outside of the polling place by supporters of the respective parties. Each elector in voting, placed an "X" opposite the name on a separate ballot, and deposited the same in the ballot box provided for that purpose, and the elector's name was thereupon written down by the clerks of the election. Twelve hundred and eighty-one qualified electors voted;

603 votes were cast for plaintiff in error, and 677 for the relator, as found and certified by the judges of election. The judges, however, declared and certified that Littlejohn, the plaintiff in error, was the only person voted for who, under the law, was qualified for the position, and declared him elected.    Both plaintiff in error and relator duly qualified, and each made demand for admission into the office, with the result that the former was recognized by the board of directors, and entered upon the discharge of the duties of the office.    Thereupon the relator prosecuted a suit in the district court to oust plaintiff in error from, and have himself inducted into the office.    The matter was determined in favor of relator, and judgment accordingly.

The portion of the section, 5919, R. S., applicable to this controversy, and necessary to be considered in a proper determination thereof, is as follows:

"That in districts of the first (1st) and second (2nd) class, any person who may desire to be a candidate for the office of school director, shall file a written notice of such intention with the secretary of the school district in which he resides at least eight (8) days prior to the day of the holding of the annual election for school directors, and the secretary of said school district shall for five (5) consecutive days preceding the day of said election, publish in some daily paper or when no daily paper is published in such district, then by posting printed or written notices in not less than five (5) public places in such district, the names of all candidates who shall have so filed notice of such intention; and the said secretary shall also have printed or written ballots prepared, bearing the names of all candidates who have certified such intention of being candidates, as aforesaid, printed or written thereon, and no person other than those whose names ap-

pear upon the ballot, so prepared, shall be voted for."

Plaintiff in error contends, that the filing, with the secretary of the school district, of a written notice of intention to be a candidate, as required by the section, was a prerequisite to the right of relator to hold the office of school director, and he, having failed in that respect, is not qualified to hold the office.

In support of this contention it is said, that the purpose of the requirement is to prevent surprise; to afford opportunity for investigation; to permit voters to inquire into the merits of the candidates; to learn their policy, and to interview them, if need be, for the purpose of ascertaining the plan they intend to pursue in conducting the schools.

We are not impressed with the soundness of the contention, or the argument in support thereon. Instead of preventing surprise, it would seem rather to afford opportunity for surprise. While, under its terms, it is true, no one could be elected unless he had so signified his desire to be a candidate, nevertheless, electors could be tricked into a feeling of security until it was too late to extricate themselves therefrom. Suppose, in a given case, electors had prevailed upon some one, well-qualified, and in whom they had full confidence, to signify his intention to be a candidate, in opposition to some one not satisfactory, who had previously become a candidate by the filing of such notice; and that, thereafter, when it was too late for another to signify his desire to be a candidate, the former is induced to withdraw, removes from the district, or dies. Under such circumstances, the electors, without any fault upon their part, are deprived of the right to vote for one of their own choice, and are compelled to vote for one whom they believe unfit for the position, or not to vote at all. The example illustrates the evil that may arise, for

the statute makes no provision by which another candidate may be substituted.

In reference to the argument, that it permits the voters to inquire into the merits of the candidates; to learn their policy; to interview them, if need be, for the purpose of ascertaining the plan they intend to pursue in conducting the schools, we suggest that if such were its purpose, it would be of little practical avail to the voter. If, after inquiry into such matters, he finds the persons who had filed notices of their intention to be candidates, unsatisfactory, he is helpless to remedy the evil. There is nothing in the statute that gives him the power to signify whom he desires to be a candidate, either by petition, convention, primary or otherwise. Moreover, the filing of a notice of intention to be a candidate in no wise tends to make the person more fit to perform the duties of the office, and it would be an unreasonable construction to hold that the requirement under consideration is intended as a qualification to hold the office. A qualification ordinarily relates to the fitness or capacity of one for a particular pursuit or profession. It is, as defined by Webster's New International Dictionary: "Any natural endowment, or any acquirement, which fits a person for a place, office, or employment, or to sustain any character." However, in disposing of this case it is unnecessary to so limit the meaning of the word. Were we to concede that the legislature may have the power, unless inhibited by the constitution, to specify the doing of any designated act as a necessary qualification to the holding of an office, it has not, either directly of by implication, declared the filing of a notice of intention to be a candidate is necessary to qualify one to hold the office of school director.

From what has been said it is certain, that the requirement in question has some other purpose. Were it not for the words of inhibition as to the persons that may be voted for, found in the last clause of the words quoted from the statute, it would seem, that the notice of intention, exacted of the persons desiring to be candidates, would measure the duty of the secretary of the school district as to certain official acts required to be done and performed by him. But when such notice of intention, coupled with the requirement that only the names of such persons who have so signified their intention to be candidates, shall be printed or written upon the ballots prepared by the secretary, is considered in connection with the words of the section, "that no person other than those whose names appear upon the ballot, so prepared, shall be voted for," the language under consideration, must be construed as constituting a restriction upon the right to vote, and in no sense as affecting the eligibility of one to hold the office.

Having determined that the purpose of the legislation is to restrict the elector in casting his vote according to his own individual judgment and preference, it is essential to determine whether such right of restriction was within the legislative power. While the legislature is expressly commanded by the constitution, to "pass laws to secure the purity of elections, and guard against abuses of the elective franchise," Const., Art. VII, Sec. 11, there are, nevertheless, certain limitations beyond which it cannot proceed.

In *People, etc., v. District Court, etc.,* 18 Colo. 26, 37, 38, decided by Chief Justice Hayt and Mr. Justice Elliott, the latter, in a specially concurring opinion, in speaking of the extent of legislative power, under this constitutional provision, said:

"But I am firmly impressed with the conviction that it cannot be extended so far as to substantially impair the right of any elector to cast his vote at each election according to his own individual judgment and preference, and to have the same counted as cast. These principles should not be lost sight of, either in legislation or in judicial decisions."

This is necessarily true, because the constitution in the same article, section 1, declares, that every duly qualified elector "shall be entitled to vote at all elections." And further, in section 5, of art. II, "That all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of suffrage."

This means that every qualified elector shall have an equal right to cast a ballot for the person of his own selection, and that no act shall be done by any power, civil or military, to prevent it. Such is the mandate and spirit of the constitution, and it thereby vests in the elector a constitutional right of which he cannot lawfully be deprived by any governmental power. While it can not be questioned that the legislature has the power to prescribe reasonable restrictions under which the right to vote may be exercised, as said in *Nicholls v. Barrick,* 27 Colo., 432, nevertheless, such restrictions must be in the nature of regulations and can not extend to the denial of the franchise itself. The test is, whether the effect of the legislation is to deny the franchise, or render its exercise so difficult and inconvenient as to amount to a denial. If the elector "is deterred from the exercise of his free will by means of any influence whatever, although there be neither violence nor physical coercion, it is not" "the free exercise of the right of suffrage," and comes clearly within the inhibition of the constitution.

DeWalt v. Bartley, 146 Pa. St., 529, 28 Am. St. Rep., 814, 816.

The language of the court in Sanner v. Patton, 155 Ill., 533, 563, 564, is peculiarly applicable here, where it is said:

"What, it may be asked, is there so sacred in the nomination of a candidate for office by a political caucus that a voter should be compelled to vote for a nominee of the caucus or else be deprived of the elective franchise? * * * and yet, if the construction contended for by appellee be the correct one, the voter is deprived of the constitutional right of suffrage. He is deprived of the right of exercising his own choice, and when this right is taken away there is nothing left worthy of the name of the right of suffrage,—the boasted free ballot becomes a delusion."

And in Daggett v. Hudson, 45 Ohio St., 548, 561, where it is said:

"The legislature has full power to regulate the right to vote, but no constitutional power to restrain or abridge the right, or unnecessarily to impede its free exercise. Under the pretense of regulation the right of suffrage must be left untrammeled by any provisions or even rules of evidence that may injuriously or necessarily impair it, and so the citizen can not forfeit the right except by his own neglect or by such peculiar accidents as are not attributable to the law itself."

Applying these rules to the legislation in question, it is clearly unconstitutional, for the reason it coerces the elector into voting for one who has filed a notice of his intention to be a candidate, and prohibits the free choice of the elector as to whom he shall have to serve him as a public officer, and thereby prevents "the free exercise of the right of suffrage."

The legislation is sought to be sustained, however, upon the theory that it prescribes an official ballot, and it is argued, that where an official ballot is authorized, none other can be used.   It may be the ballots prepared by the secretary of the district are, technically, "official ballots." for an "official ballot," as used in statutes relative to elections, necessarily means, a ballot prepared for an election or caucus, by public authority, at public expense.   Words and Phrases, Vol. 6, p. 4952.   However, assuming that they are "official ballots," it does not follow that no other ballots may be used.   The law here under consideration is unlike the "Australian Ballot Acts" of many of the states, including our own, which not only prescribes an official ballot in specific terms, but also prohibit the use of any other, and make ample provision for the identification of the ballots as official, how they shall be kept and distributed to the electors, and specify a way, and the manner in which the elector may express his choice, if he desires, for some one whose name is not printed upon the ballot.   It is these provisions, and especially the latter, found in the "Australian Ballot Acts" that have enabled the courts in well considered cases to sustain such legislation.—*Cole v. Tucker,* 164 Mass., 486 and cases there cited.

·   In *Oughton v. Black,* 212 Pa. St., 1, 6, 7, it is said: "Unless there was such provision to enable the voter, not satisfied to vote any ticket on the ballot, or for any names appearing on it, to make up an entire ticket of his own choice, the election as to him would not be equal, for he would not be able to express his own individual will in his own way." Citing *Independence Party Nomination,* 208 Pa. St., 108.

How different the law here under consideration, and the ballots prepared by the secretary of the school district.

Such ballots are not expressly declared official; no means of identification are prescribed; no declaration is made that other ballots may not be used; it is not stated how the ballots shall be kept and distributed to electors; nor does the law require a space to be left thereon, or make provision whereby the elector may express his choice according to his own individual judgment and preference, but expressly prohibits it.

Moreover, by many decisions of this court we are "committed to the doctrine that all provisions of the election laws are not mandatory, and that the will of the electors, when fully and freely expressed, will not be defeated by a strict and technical construction of the law." *People v. Earl,* 42 Colo., 328, 252, and cases there cited.

In *Young v. Simpson,* 21 Colo., 460, 462, we said:

"The principal object of the rules of procedure prescribed by statute for conducting an election is to protect the voter in his constitutional right to vote in secret; to prevent fraud in balloting and secure a fair count. Such rules are usually held to be directory as distinguished from mandatory, and unless the statute declares that a strict compliance is essential in order to have the ballot counted, the courts will not undertake to disfranchise any voter by rejecting his ballot, where his choice can be gathered from the ballot when viewed in the light of the circumstances surrounding the election."

In *Kellogg v. Hickman,* 12 Colo., 256, it was held, notwithstanding a legislative act prescribed the form, size, color of paper, etc., of ballots to be used by voters, and made it unlawful to print for distribution, or to distribute at the polls, ballots not conforming to the requirements thereof, that, as the purpose of the legislation was to guard the secrecy of the ballot, and to secure to the voter the right of suffrage free of restraint, ballots, printed on

paper of different quality, color and dimensions from that prescribed, and duly cast by qualified electors, were not illegal, and, in the absence of fraud, should be held valid.

Under these decisions it can not be said, that ballots other than those prepared by the secretary of the school district, cast at the election by duly qualified electors, should not be counted, where, as here, no fraud is alleged or claimed.

The judgment of the trial court is, therefore, affirmed.                                    *Judgment affirmed.*

*Decision en banc.*

CHIEF JUSTICE CAMPBELL not participating.