Werme v. Merrill                          CV-94-414-JD  08/07/95
                    UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE
Paula Werme, et al.

        v.                                  Civil No. 94-414-JD

Stephen E. Merrill, Governor, et al.


                              O R D E R


        The plaintiffs, Paula Werme and the Libertarian Party of New

Hampshire, bring this civil action against Stephen Merrill, in

his official capacity as Governor of New Hampshire, and William

Gardner, in his official capacity as Secretary of State of New

Hampshire.  The plaintiffs seek (1) to enjoin enforcement of N.H.

Rev. Stat. Ann. ("RSA") §§ 658:2 and 658:25, and (2) a court

order requiring the appointment of qualified Libertarians to the

positions of election inspector and ballot clerk on the same

basis as other recognized parties.  The plaintiffs bring their

claims under 42 U.S.C. § 1983, alleging that RSA §§ 658:2 and

658:25 are unconstitutional because they violate their First and

Fourteenth Amendment rights to free association, due process, and

equal protection.  The court's jurisdiction is grounded on the

existence of a federal question as provided by 28 U.S.C. § 1331

and 28 U.S.C. § 1343(a)(3).

        Currently before the court are the plaintiffs' motion for

summary judgment (document no. 18) and the defendants' motion for

summary judgment (document no. 17).

## Background

The following facts are alleged by the plaintiffs or are not in dispute. On or about December 30, 1993, Werme, a registered Libertarian, asked the selectmen's office in Mont Vernon, New Hampshire, where she then resided, to appoint her to a ballot clerk position for the March 1994 town election. After her request was denied, Werme contacted the Secretary of State's Office and requested that the town of Mont Vernon be instructed to put a Libertarian ballot clerk at the polls for the election. The Secretary of State's Office advised her that the Libertarian Party was not entitled to have ballot clerks under RSA § 658:2. RSA § 658:2 provides for the appointment of election inspectors by the "town and ward political committees[s]" of the two political parties "which cast the largest number of votes for governor in the state at the last previous general election." If no town or ward political committee exists, or if a political committee fails to make an appointment, "the appointments shall be made by the selectmen of the town or ward in equal numbers from said 2 political parties."

RSA § 658:25 provides, "Two of the inspectors, one from each of the 2 political parties, shall be designated by the moderator at the opening of the polls to act as ballot clerks." Werme could not be designated a ballot clerk under RSA § 658:25 because

2

she was not appointed an inspector of elections, and she was not appointed an inspector of elections because she was not a member of either one of the two political parties which cast the largest number of votes for governor in the last previous general election.

Ballot clerks hand out ballots and check off the names of voters. RSA §§ 658:25, 659:13. Election inspectors assist the moderator in conducting the election, with duties including, but not limited to, relieving the ballot clerks, assisting the illiterate and disabled in voting, and assisting the moderator in counting votes. RSA §§ 658:25, 659:20.

Libertarians acquired official party status following the November 1990 general election in which they received more than the required three percent of the votes cast for governor. RSA § 652:11. The Libertarian Party has maintained official party status by polling above three percent of the votes cast for governor in the 1992 general election. Party status grants a political organization a position on the general election ballot and permits it to conduct primary elections. Organizations without party status may only place their candidates on the ballot by filing petitions with the requisite number of signatures of registered voters. RSA § 655:42.

3

The counting of votes is public.  RSA § 659:63.  Only election officials are allowed inside the guardrail when the votes are counted.  RSA § 659:21.  Any candidate may demand a recount by the Secretary of State pursuant to RSA § 660:1-6, and may appeal the decision of the Secretary of State to the Ballot Law Commission.  RSA § 665:6(II).  Additionally, the Ballot Law Commission, pursuant to RSA § 665:7, has jurisdiction to "hear and determine all disputes involving alleged violations of New Hampshire election laws of a non-criminal nature for which no specific statutory appeal procedure has already been provided." An appeal of the decision of the Ballot Law Commission can be made to the New Hampshire Supreme Court.  RSA § 665:14.  RSA § 666:2-3 provides criminal penalties for violations of election laws.  Each political party is also entitled to appoint a "challenger of voters" at any polling place who may stand within the guardrail to "see and hear each voter as he offers to vote." RSA § 666:4.

The duties of election inspectors and ballot clerks do not include voter registration.  The supervisors of the checklist are responsible for the checklists, the listing of voter registrations, and the registration of the voters at the polls. The town clerks are responsible for voter registration and acceptance of party changes on days other than the dates of

4

elections.  Supervisors and town clerks are elected.  City clerks are elected by the city council.  Neither the Governor nor the Secretary of State play a role in the nomination of ballot clerks and election inspectors or any role in the registration of voters.[1]

In the 1990 general election, John Stevens, the town clerk of Conway, failed to report any Libertarian votes for governor, although there were votes cast for the Libertarian candidate for governor.  Affidavit of John Stevens.  In the 1992 presidential primary a registered Democrat was denied a Libertarian ballot in Ward I in Nashua and was not allowed to change her party registration from Democrat to Libertarian.  Affidavit of Kathleen McBride.  In the town of Hudson, two voters discovered that their registrations had been switched from Libertarian without their consent.  Affidavit of Amy Bollenbach.  In addition, the plaintiffs have submitted statistical evidence showing changes in the registration status of a number of other voters, although no evidence has been provided which establishes that such changes were improper or without consent.  There have been no complaints to the Secretary of State's Office regarding any improper changes.

---

[1]The defendants, however, have not asserted a lack of personal involvement with sufficient specificity to be entitled to judgment as a matter of law on that issue.

                              Discussion

I.   Summary Judgment Standard

     Summary judgment is appropriate when the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to material fact and that the moving party is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
"The burden is on the moving party to establish the lack of a
genuine, material factual issue, and the court must view the
record in the light most favorable to the nonmovant, according
the nonmovant all beneficial inferences discernable from the
evidence."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st
Cir. 1993) (citations omitted), cert. denied, 115 S. Ct. 56
(1994).  Once the moving party has met its burden, the nonmoving
party "must set forth specific facts showing that there is a
genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer
the "swing of the summary judgment scythe."  Jardines Bacata,
Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989).  "In
this context, 'genuine' means that the evidence about the fact is
such that a reasonable jury could resolve the point in favor of
the nonmoving party; 'material' means that the fact is one 'that

                                 6

might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248) (citations omitted).

A. Defendants' Motion for Summary Judgment

The plaintiffs assert that the restriction on eligibility to serve as an election inspector or ballot clerk to those who are members of the two political parties receiving the most votes in the last previous election for governor violates their rights to freedom of association, due process, and equal protection under the First and Fourteenth Amendments to the United States Constitution.[2] Complaint at 5. In support, the plaintiffs argue that because they have achieved and maintained "party" status, the state statutes limiting the appointment of ballot clerks and election inspectors to the two parties casting the largest number of votes for governor in the last previous election are discriminatory and, therefore, cannot fall into the class of "reasonable, nondiscriminatory" election laws which are usually

_____

[2]Although the plaintiffs have presented evidence of voting and registration irregularities, they have only asserted that these irregularities are evidence of harm caused by RSA §§ 658:2 and 658:25. Therefore, this is solely a facial challenge to the statutes. See Defendants' Motion for Summary Judgment at 1; Plaintiffs' Motion for Summary Judgment and Incorporated Brief at 12; Complaint at 5.

7

upheld.  See Burdick v. Takushi, 504 U.S. 428, 434 (1992).  The defendants respond that the statutes are not discriminatory and, as such, need only be rationally related to a legitimate state interest.  Id.

The right to cast one's vote effectively and the right to associate for the advancement of political beliefs "rank among our most precious freedoms."  Williams v. Rhodes, 393 U.S. 23, 30 (1968).  However, Article 1, Section 4 of the United States Constitution authorizes the states to prescribe the "Times, Places and Manner of Holding Elections for Senators and Representatives."  The Supreme Court has noted that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."  Storer v. Brown, 415 U.S. 724, 730 (1974).

In Anderson v. Celebrezze, the Supreme Court established the standard to be applied by a court considering a challenge to a state election law must follow:

> It must first consider the character and magnitude of
> the asserted injury to the rights protected by the
> First and Fourteenth Amendments that the plaintiff
> seeks to vindicate.  It then must identify and evaluate
> the precise interests put  forward by the State as
> justifications for the burden imposed by its rule.  In
> passing judgment, the Court must not only determine the
> legitimacy and strength of each of those interests, it
> also must consider the extent to which those interests
> make it necessary to burden the plaintiffs rights.

8

460 U.S. 780, 789 (1983); cf. McIntyre v. Ohio Elections Comm'n, 115 S.Ct. 1511, 1518 (1995) (Celebrezze test applies to restrictions on mechanics of electoral process, but not to regulations of "pure speech"). When the plaintiff's rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." Burdick, 504 U.S. at 434 (quoting Norman v. Reed, 502 U.S. 279, 289 (1992)). But when the election law subjects the plaintiff's rights to "reasonable, nondiscriminatory" restrictions, "the State's important regulatory interests are generally sufficient to justify" the provision. Burdick, 504 U.S. at 434 (quoting Celebrezze, 460 U.S. at 788); see also American Party of Texas v. White, 415 U.S. 767, 781 (1974) (only invidious discrimination offends the federal constitution).

The plaintiffs contend that RSA §§ 658:2 and 658:25 have a "real and appreciable impact on the exercise of the franchise," and should therefore be "closely scrutinized". Bullock v. Carter, 405 U.S. 134, 144 (1972). However, despite the fact that appointment as an election inspector or ballot clerk is a means of participating in the electoral process, the statutory restrictions on such appointments do not interfere with the plaintiffs' ability to express their political views. See Coalition for Sensible and Humane Solutions v. Wamser, 771 F.2d

9

395, 399 (8th Cir. 1985) (refusal to appoint qualified members of minority and low-income association as voter registrars is a reasonable, non-discriminatory restriction); Pirincin v. Board of Elections, 368 F. Supp. 64, 71 (N.D. Ohio 1973), aff'd mem., 414 U.S. 990 (1973) (procedure for selecting county boards of elections from parties with the two highest votes "need not receive close judicial scrutiny"); Baer v. Meyer, 728 F.2d 471, 476 (10th Cir. 1984) (having poll watchers from every party is not a vital interest for constitutional access to the voting process). Additionally, New Hampshire's election laws contain numerous provdiscrimisions to ensure the proper counting of votes and registration of voters. See RSA §§ 659:21; 659:63; 660:1-6; 665:6; 665:7; 665:14; 666:2-4. Where adequate state corrective procedures exist, federal courts are not equipped or empowered to supervise election irregularities, "including even claims of official misconduct." Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978). The injury which the plaintiffs claim to have suffered is not of such a character and magnitude as to require close scrutiny.

Having determined that close scrutiny is not required, the court next considers whether the interests of the state are rationally related to the restrictions. The defendants assert that the provisions for selecting election inspectors and ballot

10

clerks serve the important state interest of preventing the possibility of fraud. Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 7. They argue, "By limiting the inspectors to the two parties with the largest number of votes . . . the Legislature prevented a situation in which inspectors would be working in large groups which might prove cumbersome and inefficient." Id. at 8. Additionally, the defendants claim that because Libertarian voters make up such a small percentage of the voters in most precincts, granting the plaintiffs the relief they desire could lead to a disproportionately high representation of Libertarian party members as election inspectors. Id. at 10. The plaintiffs respond that the election inspectors of the Republican and Democratic parties have no stake in protecting the rights of Libertarians. Reply to Defendants' Motion for Summary Judgment at 3. Additionally, Werme claims that she was permitted to be one of twenty election inspectors in the March 1995 Plymouth local elections.[3] The plaintiffs assert, "Despite the high number of election inspectors, and despite the participation of [Werme], there were no complaints that large groups of election

_____

[3]The Plymouth moderator chose to disregard state law and allow Werme the opportunity to be an election inspector in the interest of "fairness." Plaintiffs' Motion for Summary Judgment and Incorporated Brief at 6.

11

inspectors caused any inefficiency in the counting of the ballots." Plaintiffs' Motion for Summary Judgment and Incorporated Brief at 6.

The court rules that the contested statutory scheme is constitutional. The Supreme Court has held in the context of ballot access cases that it is permissible for a state to distinguish between political parties on the basis of prior elections. Bullock, 405 U.S. at 147; Jenness v. Fortson, 403 U.S. 431, 441-42 (1971). Moreover, courts have upheld similar statutory schemes in other states. See, e.g., Vintson v. Anton, 786 F.2d 1023, 1025 (11th Cir. 1986) (Alabama's use of bipartisan election boards whose members are chosen from two parties receiving most votes in the last election is an effective means to prevent fraud and ensure honest elections); Wamser, 771 F.2d at 400 (St. Louis election judge qualifications not discriminatory where based on membership in the two major political parties rather than affiliation with the Democratic or Republican parties specifically); MacGuire v. Houston, 717 P.2d 948, 953 (Colo. 1986) (Colorado's appointment of election judges from the two parties receiving most votes in last election resulted in a system of monitoring and gave an appearance of propriety to voters). As discussed supra, the restriction on the plaintiffs' right of association is not "severe." Likewise, the restrictions

12

are rationally related to the legitimate concerns and interests of the state because the restrictions are a check against the possibility of fraud and prevent a situation in which inspectors would be working in more cumbersome and inefficient groups. Therefore, RSA §§ 658:2 and 658:25 do not unconstitutionally restrict the plaintiffs' fundamental rights.[4]

In addition, the plaintiffs assert that the restrictions on appointment as an election inspector and ballot clerk violate the New Hampshire Constitution, Part 1, Articles 2, 4, and 11. Because the court dismisses the plaintiffs' federal claims, it must balance judicial economy, convenience, fairness to the litigants, and comity in deciding whether to exercise supplemental jurisdiction over the remaining state law claims. Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991). "[W]hen a district court dismisses all federal claims before trial, it normally will dismiss pendent state actions as well." Id. at 964. In this instance, judicial economy is best served by

_____

[4]Werme also claimed that she was individually denied equal protection of the laws, as guaranteed by the First and Fourteenth Amendments, by the defendants "when they infringed on her rights of free association by denying her the right to be an election inspector for the political party of her choice when she was otherwise qualified by statute." Complaint at 5. Since the defendants assert, and the plaintiffs do not dispute, that this is a facial challenge to the statute, and that there is no claim that the statute is being improperly applied, Werme's individual equal protection claim is waived.

dismissal of the state claims because the New Hampshire state court is in a better position to adjudicate New Hampshire constitutional issues. The court therefore declines to exercise supplemental jurisdiction over the plaintiffs' state law claims.

### B. Plaintiffs' Motion for Summary Judgment

In view of the foregoing, the plaintiffs' motion for summary judgment is denied.

### Conclusion

For the reasons set forth above, the defendants' motion for summary judgment (document no. 17) is granted. The plaintiffs' motion for summary judgment (document no. 18) is denied. The clerk is ordered to close this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 7, 1995

cc:  Paula Werme, pro se
     Christopher P. Reid, Esquire
     Martin J. Bender, Esquire

14